## PARLEY'S PARK S. M. CO. v. KERR.

A Patent from the United States for Mineral Land may be Avoided in Equity for Mistake, or fraud and misrepresentation practiced upon the government; but whether this may be done in an action to which the United States is not a party, *quære;* the validity of such patent, however, can not be questioned where no allegations of fact constituting the mistake, fraud, or misrepresentation are made in the pleadings.

Appeal from the first district court. The complaint in this action contains the following allegations: That the plaintiff is a New York corporation; that it is the owner, subject only to the paramount title of the United States, and in possession of the Central and Lady of the Lake mining claims, particularly describing them by metes and bounds; "that the defendant claims some interest or estate in said premises, or some part thereof, adverse to said plaintiff, but said claim of defendant, as said plaintiff avers on information and belief, is without any legal or equitable foundation and void; that

the same is a cloud on said plaintiff's title, and an injury and damage to said plaintiff; that said plaintiff is greatly embarrassed in the use and disposition of its said mining claim, and they are greatly depreciated in value by reason of said adverse claim; that said defendant has not any estate, right, title, or interest whatever in or to said land and premises, or any part thereof."

The complaint concludes with the following prayer:

" 1. That the defendant may be required to set forth the nature of his claim, and that all adverse claim of the defendant may be determined by a decree of this court.

" 2. That by said decree it be declared and adjudged that the defendant has no estate or interest whatever in or to said land and premises; and that the title of said plaintiff is good and valid.

" 3. That the defendant be forever enjoined and debarred from asserting any claim whatever in or to said land or premises adverse to the plaintiff; and for such further and other relief as this court shall deem meet and agreeable to equity, and for plaintiff's costs of suit."

The defendant in his answer denies that the plaintiff is the owner or in possession of either of the mining claims mentioned; and " that the plaintiff has ever owned or now owns, or has ever been or now is in the possession of, such portion of the premises described in the complaint, and therein called the Central and Lady of the Lake mining claims, as are embraced in the Clara mining claim," a claim owned by the defendant; and admits that the defendant claims an estate and interest adverse to the claim of the plaintiff in so much of the premises described in the complaint as is embraced in the said Clara mining claim; and denies that he has made or makes any claim to or claimed any estate or interest in the premises described in the complaint, excepting only that portion thereof embraced in the Clara mining claim, as the same is therein described; and alleges that before the commencement of this action he was and still is the owner in fee, under a patent from the United States, and in the possession of the Clara mining claim, particularly describing it, from which it appears that there is a surface conflict between the Clara and both claims of the plaintiff.   The answer con-

cludes with the prayer that plaintiff's complaint may be dis-
missed, and all relief thereby prayed denied, and for costs and
for such other relief as may be proper.

The case was tried upon the following stipulation of facts,
and no oral testimony was offered or taken in the case:

Facts agreed to and considered as if fully proved by plaint-
iff:

1. The Central mining claim was located August 19, 1876,
and exhibit 1 is a correct copy of the location notice.

2. The said mining claim was officially surveyed for appli-
cation for patent August 2, 1880, and application for patent
soon thereafter made by the plaintiff or its grantors.  In such
application there was omitted from the Central mining claim
the area in conflict with the Lady of the Lake mining claim,
and the application was for three and eighty-nine hundredths
acres of surface ground colored yellow on exhibit 3.

3. The Lady of the Lake mining claim was located July
25, 1875, and exhibit 2 is a correct copy of the location notice.

4. Said Lady of the Lake mining claim was officially sur-
veyed for application for patent on the eighth day of July,
1876.

5. Said mining claims and the Clara mining claim are cor-
rectly represented on the annexed or accompanying map,
marked exhibit 3.

6. The Central mining claim and the Lady of the Lake
mining claim, at the commencement of the action, were and
still are the property of and owned by the plaintiff, to the
extent that the locators and their grantees could convey and
give title to the same, the plaintiff having succeeded to such
interest as said locators and their grantees could grant.  There
was no actual possession of the conflict and disputed areas at
the commencement of the action.  But the plaintiff had pos-
session in accordance with mining laws and customs of other
parts of the Central and Lady of the Lake mining claims,
and by virtue of such possession was also in possession of the
conflict areas, if such conflict areas are rightfully a part of the
Lady of the Lake and Central mining claims, and not the
property of the defendant under his patent for the Clara
mining claim.

That the plaintiff and its grantors have done the work re-

quired by law from year to year, to the commencement of this action on the said Lady of the Lake and Central mining claims respectively.

7. The annexed copy (printed) of the by-laws of the Blue Ledge mining district, in which the premises in question are, and during all the times mentioned in this stipulation have been, situated, is correct; and correctly states and shows the by-laws passed and adopted in said district, and all of them, and the dates when the same were adopted respectively. The first by-laws passed for Blue Ledge district provided that the width of claims should be one hundred feet "from the wall rocks of the lode." On May 4, 1872, the following by-law with reference to the width of lodes was passed: "The surface width shall be governed by the laws of U. S. A."

Facts agreed to and considered as if fully proved by the defendant:

1. The Clara mining claim was located June 28, 1872, and exhibit A, annexed, is a correct copy of the location notice.

2. Said mining claim was officially surveyed for application for patent March 31, 1876.

3. Application for patent under said notice and survey was made in the United States land office at Salt Lake City, Utah, April 28, 1876; the application included an application for the Clara mill site.

4. The Clara mining claim was entered and paid for at said office February 20, 1879.

5. The patent for the Clara mining claim was granted on the sixth day of February, 1880, under said application and on said entry, to the defendant, who had succeeded to the interest of the locators, and their grantees, and the said claim as patented is correctly shown on plaintiff's exhibit 3, a copy of the patent may be annexed and made a part of the case in this court, or on any appeal. The Clara patent was for one thousand five hundred feet in length by six hundred feet in width.

6. On the twenty-seventh day of June, 1876, and during the sixty days' publication of the notice of application for patent for the Clara mining claim and mill site, the owners

of the Lake mining claim filed in the United States land office an adverse claim against said application for patent, and thereby made an adverse claim to the areas in conflict between the Lady of the Lake mining claim and the Clara mining claim and Clara mill site. On the twenty-fifth day of July, 1876, agreements in writing were made between the owners of the Lady of the Lake mining claim and the applicants for patent for the Clara mining claim and mill site, as follows: An agreement whereby the owners of the Clara mill site relinquished their application for patent for so much thereof as conflicted with the Lady of the Lake mining claim, and the owners of the Lady of the Lake mining claim agreed in consideration thereof to prosecute their application for patent for said claim with diligence, and when patent was obtained, to convey to the owners of said mill site, or their assignees, the area in conflict between said mill site and said Lady of the Lake mining claim, excepting and reserving, however, to the owners of the Lady of the Lake mining claim any mineral vein or veins under the surface of said conflict area, and also the right to mine and extract any minerals therein. And the owners of the Clara mining claim agreed not to protest the application for patent for the Lady of the Lake mining claim, and at the same time the owners of the Lady of the Lake mining claim, as part of the same agreement, made and delivered to the applicants for patent for the Clara mining claim, and also filed in the said United States land office, a written withdrawal, relinquishing their said protest and adverse claim against the application for patent for the Clara mining claim, and released to the United States and their grantees the lands and premises in conflict between the said Clara and the Lady of the Lake mining claims, the said conflict area containing forty hundredths of an acre, more or less.

7. That on the fourth day of May, 1872, it was known to miners of the Blue Ledge mining district that an act of congress relating to the location and extent of mining claims upon mineral lands of the United States had passed, or was about to be passed.

8. The premises in dispute, being the conflict areas between the Clara mining claim and the Lady of the Lake and Cen-

tral mining claims, are of the value of more than one thousand dollars, and the area in conflict between the Central and Clara mining claims is of the value of more than one thousand dollars.

It is stipulated that the foregoing are all the facts in the case, and the case may be heard and determined thereon, or on such of them as the court shall hold material and admissible in evidence; each party reserving the right to object to the materiality and competency of any of said facts as fully as he or it could do if proof thereof was offered at the hearing.

And the defendant now objects to the competency and admissibility of item 7 in plaintiff's facts, and any other facts or evidence offered with a view to attack or impeach the validity of the Clara patent, on the ground that these are not the proper parties to the action, or any foundation laid in the pleadings, or any legal or equitable ground set forth in the complaint to justify an impeachment of the patent title.

The court made and filed the following findings:

This action having been heretofore submitted to the court on the pleadings, stipulation of the parties as to the facts, and the argument of counsel, Messrs. Sutherland & McBride appearing as counsel for the plaintiff, and Bennett, Harkness & Kirkpatrick as counsel for defendant, and the cause having been duly considered, the following findings of fact and conclusions of law are now made, to wit:

It is found that the facts are as stipulated by the respective parties, in the stipulation now filed and the exhibits thereto attached, and said stipulation as to facts is adopted by the court as a finding of facts. And as conclusions of law, it is found that the defendant owns and is entitled to the possession of the areas in conflict between the Clara mining claim and the Central and Lady of the Lake mining claims, and that the plaintiff at the time of the commencement of the action did not own and was not entitled to the possession of said conflict areas, or any part thereof.

That the defendant is entitled to judgment in accordance with these findings, and dismissing the plaintiff's action on the merits, and for costs of suit.

Judgment entered accordingly, from which plaintiff appeals.

*Sutherland & McBride,* for the appellant.

Before proceeding to discuss the main question in this case, we call attention to the error in the first division of respondent's brief.

It is there said, "It is conceded the defendant has the title in fee from the United States." The complaint is treated as one to compel the defendant, as a trustee, to convey to the plaintiff. This is a mistake. All that is said by respondent's counsel under that head is based on that error.

The plaintiff's mining claims mentioned in the complaint embrace the ground in controversy. They were regularly located of full width under the local rules, and have been properly worked from year to year. The plaintiff has such estate therein as locators may have in a mining claim under the mining act. It has this estate in the ground in controversy, unless it is conveyed by the defendant's patent as part of the Clara. That mining claim was located at an earlier day, and located six hundred feet wide. This disputed ground is a strip about one hundred feet wide on the northerly side. Its nearest line is consequently about two hundred feet laterally from the center line and discovery of the Clara. The Clara patent does not convey it unless a patent could be legally issued for a mining claim in Blue Ledge district of the width of six hundred feet.

The plaintiff files its complaint based on its title and estate as the owner of valid mining locations. It asks no title from the defendant. The object of the suit is to have an adverse claim annulled. The plaintiff alleges generally its title, as it is entitled to do. Under this allegation, it may prove the locations, and all the facts essential to make out the title necessary to a plaintiff in an action under section 254 of the code.

The complaint alleges in general terms the adverse claim of the defendant, as is the universal and correct practice.

We contend that the Clara patent, so far as the premises in question are concerned, is void. We do not contend that the patent is merely voidable; therefore the respondent's brief fails to reach our positions. We contend that the patent is void—absolutely void. It may be good for so much ground

as it might legitimately convey; but as to the plaintiffs, and as affecting what is claimed in this action, it is absolutely void. This conclusion inevitably results from these three propositions, which we insist are legally sound: 1. If the law limited mining claims in Blue Ledge mining district to two hundred feet in width at the time the Clara was located, the patent to the defendant for all ground beyond that width is void; 2. The miners' rules and customs in that district, in force at that time, as a matter of legal construction, did then so limit mining claims; 3. The decision of the land department to the contrary is not binding on the courts.

As to the first proposition, very little need be said. The question is not in doubt nor the decisions in conflict. This court recognized the correctness of the proposition in *Kahn* v. *Old Tel. Co.*, 2 Utah, 195. It is settled by repeated decisions of the supreme court of the United States: *Stoddard* v. *Chambers*, 2 How. 317; *Easton* v. *Salisbury*, 21 Id. 426; *Sherman* v. *Buick*, 93 U. S. 216; *Polk's Lessee* v. *Wendell*, 9 Cranch, 87.

On the second proposition, we insist that when the by-laws of a district are written, as they are supposed to be in this territory, Comp. Laws, sec. 1222, and as the regulations of the land department presuppose, and their existence and tenor are proved as matter of fact, their interpretation is matter of law.

This court said in *McCornick* v. *Varnes*, 2 Utah, 357, that "congress has given to the local laws and customs of miners the force and effect of laws."

The commissioner in deciding on the application for patent, and any court in testing the validity of a location or patent, depending on conformity to them, must interpret and apply them as laws.

Section 4 of the by-laws passed May 17, 1870, was in force when the Clara was located—that section limited the location to two hundred feet in width. It was passed to regulate mining locations under the act of 1866—vein locations. After the passage of the act of 1872 requiring claims to be marked on the ground, the "wall rocks of the lode" became but the mathematical center line of the claim. Such claims are not marked out to follow all the sinuosities of a vein or a lode, but its general course.

This reasonable construction this court adopted in the case of *Campbell* v. *Taylor* [not reported]. That case involved the construction of a by-law limiting a mining claim to one hundred feet on each side of the vein; and it was held to limit it to two hundred feet in width. This decision is the law of the territory.

The miners met on the fourth of May, 1872, six days before the act of 1872 was passed, and loyally ordained that the surface width be governed by the laws of the U. S. A. Conceding that this action referred to the laws of the United States, it simply formulated a legal truism; for the surface width must be so governed, whether the miners so vote or not. At that time, however, the laws of the United States provided that the surface should be of such extent as the local rules prescribed. Hence section 4 of the rules passed May 17, 1870, was absolutely necessary in order to have any surface ground at all. By the act of 1872 it was left to the miners to decide what the width should be between twenty-five and three hundred feet on each side of the vein. The limitation fixed by section 4 of the rules of May 17, 1870, was in entire harmony with the later act, and operated to govern the width afterwards as well as before.·

The third proposition must be accepted as correct if the others are, for it is a necessary consequence.

The supreme court of the United States has settled the doctrine that the rulings of the land office upon matters of law are not binding on the courts; that they do not conclude the immediate parties: *Johnson* v. *Towsley,* 13 Wall. 86, 87; *Shipley* v. *Cowan,* 91 U. S. 340; *Aiken* v. *Ferry,* 6 Saw. 79, 80.

It necessarily follows that the Clara location violated the rules of the district and the act of congress in its width. Not being confined to the width fixed by the miners, it was a void location; at least, as to so much of the ground embraced in it as lay beyond the limits to which the rules and the law confined it.

*Bennett, Harkness & Kirkpatrick,* for the respondent.

The complaint is insufficient, and states no facts or grounds to authorize evidence to attack, or a judgment avoiding a patent granted by the United States for the land in dispute.

The statute only enlarges the class of cases in which equitable relief, quieting title, could formerly be granted: *Curtis* v. *Sutter*, 15 Cal. 260.

Before the statute, it was necessary that the plaintiff should first establish his title at law: *Curtis* v. *Sutter, supra.* The statute dispenses with this prerequisite, but the nature of the action assumes now, as formerly, that the plaintiff has the better title. In this case it is conceded the defendant has the title in fee from the United States. The United States can never grant the land again unless this patent is set aside. Granting the plaintiff all the relief sought, and the legal title would still be outstanding in the defendant. We contend a general complaint under section 254 is not adequate for such a case.

That section is adequate for cases where the plaintiff, at law or in equity, has the better title in himself. The section and a complaint under it are not adequate where the plaintiff intends to charge the defendant as a trustee, and must get a conveyance of the title held by the defendant before he is invested with the better title.

It is necessary, in order to set aside a patent for fraud or mistake, to plead the facts specially and ask the proper relief, in order that the land may be again conveyed by the United States; and if it is sought to charge the defendant as trustee of the legal title, the facts should be specially pleaded and a conveyance asked: *Sharp* v. *Stephens*, 6 Saw. 48, and cases cited.

Equitable defenses may be interposed to an action of ejectment; but if it be admitted the plaintiff has the legal title, the pleading must be special, and set up all the facts and circumstances affecting it: *Gibson* v. *Chatteau*, 13 Wall. 92; *Bruck* v. *Tucker*, 42 Cal. 349.

Reverse the parties, and the plaintiff would have to answer by pleading the facts.

When the defendant admits the legal title in the plaintiff, he must not only make his answer as full as a bill in equity, but must also become an actor, make his answer a counterclaim, and demand a conveyance; otherwise the legal and equitable titles would never be united: 15 Barb. 365; 34 Wis. 486; 35 Id. 631. We claim the same rule applies to a plaintiff.

The patent of defendant is not void. The title was in the United States, and the commissioner was authorized to convey it: *Kahn* v. *Old Tel. M. Co.*, 2 Utah, 175.

There is no question of fraud or mistake, nor any question not within the jurisdiction of the commissioner, and his decision is final. What was the local custom of the mining district was a question of fact: 6 Saw. 79, 148.

We objected to the introduction of any evidence to attack the Clara patent. The mining rules were offered for this purpose. But the Clara patent, if improperly issued, is not void, but voidable merely, and there is nothing in the pleadings of the plaintiff which would authorize the admission of such evidence: *Kahn* v. *Old Tel. Co.*, 2 Utah, 194.

EMERSON J.:

This is an action under section 254 of the practice act. The complaint is in the most general terms, and simply avers that the respondent claims some interest or estate in the premises in controversy, or some part thereof, adverse to the appellants, which interest or claim, it is averred on information and belief, is without any legal or equitable foundation, and void, and that it is a cloud upon its title, etc., the usual formal allegations. The respondent pleads, and the agreed facts show, a patent to him from the United States, including the ground in controversy. In view of the facts set out in the agreed statement, the most that can be said as against this patent is that it is voidable, and not void. Passing by the question whether an action can be maintained to set aside a voidable patent granted by the United States without making it a party, this complaint is insufficient to authorize the admission of evidence attacking the validity of the patent, or to sustain a judgment or decree of the court annulling it. Such a decree would not be in accordance with any specific relief demanded by the appellant, and could not be included in the general clause for relief, under section 149 of the practice act, as it would not be consistent with the case made by the complaint or embraced in the issues.

Counsel for the appellant say in their brief that "the object of the suit is to have an adverse claim annulled." The adverse claim is shown to be based upon a patent title from the gov-

ernment. No objection is made that the patent is void upon its face, or otherwise informal. The government certainly had the title, the patent is not unauthorized or prohibited by any law, and is between competent parties, and is voidable only in equity for some mistake, fraud, or misrepresentation practiced upon the government: *Kahn* v. *Old Telegraph M. Co.,* 2 Utah, 174. Granting that this may be done without making the party defrauded, the government, a party to the action, the acts of fraud, misrepresentation, and the like must be specified in the complaint, or it will not state facts sufficient to constitute a cause of action: *Semple* v. *Hagar,* 27 Cal. 163. As the other members of the court are not prepared to pass upon the remaining point raised on the appeal, and as the one discussed is decisive of the case, the judgment of the lower court dismissing the action is affirmed.

HUNTER, C. J., and TWISS, J., concurred.