[No. 14582, In Bank. — May 5, 1892.]

## DOLORES C. JACKSON, APPELLANT, v. JOHN EUGENE JACKSON, RESPONDENT.

MARRIAGE — ABSENCE OF FORMER SPOUSE FOR FIVE YEARS — VALIDITY OF SECOND MARRIAGE. — Under section 61 of the Civil Code, a marriage is not void because contracted when one of the spouses had a former husband or wife living, where such former husband or wife has been absent and not known to the other spouse to be living for the space of five years before the subsequent marriage, or is generally reputed and believed to be dead at the time of the contracting of the second marriage, but such subsequent marriage is valid until its nullity is adjudged by a competent tribunal.

ID. — ABSENCE OF WIFE — DESERTION IN FOREIGN COUNTRY. — A wife who was residing with her husband in a foreign country, and there deserted him and went to live with her parents, is "absent" from the husband, within the meaning of subdivision 2 of section 61 of the Civil Code, although the husband afterwards came to this country to live, leaving her with her parents in the foreign country.

ID. — ACTION FOR ANNULMENT OF SECOND MARRIAGE — CROSS-COMPLAINT — ANNULMENT OF DEEDS OF SETTLEMENT — FRAUD AND MISTAKE. — In an action by a wife for the annulment of the marriage, upon the ground that at the time it was contracted the husband had another wife living, and that the former marriage had never been dissolved, where the husband seeks in a cross-complaint to have deeds of property executed by him to the wife set aside, on the ground that he was induced to execute and deliver them by fraud and deceit on her part, and by mistake on his part, evidence on the part of the husband tending to show that the deeds were executed at the earnest and repeated request and solicitation of the wife, and that she intended thereby to get all the property in her own name, so that if it should turn out that the former wife was living, she could have her marriage annulled and yet claim and hold the property, and that the husband, honestly believing his former wife to be dead, and having full confidence in the second wife as a true, dutiful, and affectionate wife, and expecting their marital relations to continue so long as both should live, yielded to her wishes and solicitations, is sufficient to support a finding of fraud and mistake in the execution of the deeds.

ID. — HUSBAND AND WIFE — TRUST RELATION — UNDUE INFLUENCE — FRAUD. — The relations between a husband and wife are confidential, and all transactions between them respecting property are subject to the same rules that control a trustee and cestui que trust. If one of the spouses uses the influence which is given by the marriage relation to obtain any advantage over the other spouse, it is a fraud against such other, for which equity will grant appropriate relief.

ID. — AMENDMENT OF CROSS-COMPLAINT TO CONFORM TO PROOFS OF FRAUD — DISCRETION — ABSENCE OF REQUEST FOR COUNTER-EVIDENCE. — The action of the trial court in allowing an amended cross-complaint, setting up fraud in the procurement of the deeds of settlement, to be filed after the case had been submitted for decision, and in refusing to strike out

the testimony of the defendant tending to show the fraud pleaded in the amended cross-complaint for the first time, is not an abuse of discretion, where the testimony was all in, and the amendment was made to conform to the proofs; and the fact that the plaintiff did not, in giving her testimony, deny the defendant's charges of fraud, because not based upon any issue in the case, did not render the action of the court prejudicially erroneous, in the absence of a request by the plaintiff to have the case reopened for the purpose of giving such testimony.

ID. — DIVISION OF COMMUNITY PROPERTY — REVIEW UPON APPEAL. — The action of the court, in dividing equally between the parties only the community property described in the deeds, will not be held erroneous upon appeal, where it does not appear from the record that there was any other community property at the date of the decree.

ID. — DECREE SETTING ASIDE DEEDS AND DIVIDING PROPERTY — EFFECT OF CONVEYANCE DECREED. — A decree of the court vacating and setting aside the deeds, allotting an undivided one half of the property to the plaintiff and the other undivided half thereof to the defendant, and requiring the plaintiff to execute a deed to an undivided one half of the property to the defendant, sufficiently shows that the property is to be equally divided between the parties, and that there is to be vested in each of the parties the title to an undivided half of it, and that the deed from the plaintiff is not intended to affect plaintiff's half of the property.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion.

*Finlayson & Finlayson*, for Appellant.

The marriage between plaintiff and defendant was void from the beginning, because the evidence shows, without contradiction, that defendant, and not his first wife, was the "absent" spouse, and the exception contained in subdivision 2 of section 61 of the Civil Code only applies where it is the "absent" spouse who is not heard of, and it can be invoked only by the innocent, and not the absent, spouse.    (Lawson on Presumptive Evidence, 212 et seq.; *Commonwealth* v. *Thompson*, 6 Allen, 591; 83 Am. Dec. 653; *Commonwealth* v. *Thompson*, 11 Allen, 23; 87 Am. Dec. 685; *Williams* v. *Williams*, 63 Wis. 58; 53 Am. Rep. 258; 1 Am. & Eng. Ency. of Law, 35.)    There is no evidence that the defendant, before his marriage to plaintiff, prosecuted any inquiries at his first wife's last known place of

residence; nor does the evidence show anything more than mere willful ignorance on his part, if in fact he did not know of her whereabouts all the time, and that she was alive; and therefore he is not entitled to the benefit of the exception in the code. (*Kinzey* v. *Kinzey*, 7 Daly, 460; *Gall* v. *Gall*, 21 N. C. 106; *McCartee* v. *Camel*, 1 Barb. Ch. 455. See note to *Smith* v. *Smith*, 46 Am. Dec. 130–134.) A high moral and also legal obligation rested upon the defendant to make a suitable compensation to plaintiff for the injury sustained by her through the gross deceit practiced by defendant upon her, in entering into the marriage relation with her without informing plaintiff that he had been married to another, whom he had left in Australia. (*Blossom* v. *Barrett*, 39 N. Y. 434; 97 Am. Dec. 747; 2 Bishop on Marriage and Divorce, sec. 696; *Cooper* v. *Cooper,* 147 Mass. 370; 9 Am. St. Rep. 721; *Williams* v. *Williams*, 40 Fed. Rep. 521; *Doe* v. *Horn*, 1 Ind. 363; 50 Am. Dec. 470.) A court of equity would not interfere to set aside the deeds, even if the plaintiff had resorted to deceit to obtain the recompense due her from defendant. (See *State* v. *Hurst*, 11 W. Va. 54; 1 Pomeroy's Eq. Jur., secs. 397, 404; *Holton* v. *Noble*, 83 Cal. 7; Bigelow on Fraud, 190.) The execution of the deeds was an act which tended toward the fulfillment of the obligation which rested upon defendant to provide for, and make compensation to, plaintiff, and therefore equity will impute an intention on the part of the defendant to fulfill that obligation, and will not now lend its aid to help him to undo what, in equity and good conscience, he was bound to do, and did do. (1 Pomeroy's Eq. Jur., secs. 420–422; 1 Perry on Trusts, secs. 143, 144.) The motive by which the plaintiff claims he was actuated to make the deeds was *contra bonos mores*, and had there been any agreement on the part of plaintiff to continue her relations with defendant, even after it should be discovered that his first wife was alive, the deeds having been executed, the parties would have stood *in pari delicto*, and equity would not interfere.

(*Valleau* v. *Valleau*, 6 Paige, 207, 209.  See *Hill* v. *Free-man*, 73 Ala. 200; 49 Am. Rep. 48, and note 49–51; *Moore* v. *Adams*, 8 Ohio, 372; 32 Am. Dec. 723.)  A party cannot obtain relief from a court of equity where, to do so, he is forced to rely upon a contract which is rooted in an illegal or immoral consideration.  (*Ayerst* v. *Jenkins*, L. R. 16 Eq. 275; *Barnard* v. *Crane*, 1 Tyler, 457; *Abbe* v. *Man*, 14 Cal. 210.)  All the precedents, in cases where the facts were similar to the facts as found by the court below, are opposed to the court's conclusions of law and to its judgment herein, — that is, the facts found, even if true, do not constitute a sufficient ground for the granting of any relief to the defendant. (*Stultz* v. *Stultz*, 107 Ind. 400; *Orr* v. *Orr*, 8 Bush, 156; *Finlayson* v. *Finlayson*, 17 Or. 347; 11 Am. St. Rep. 836; *Roxell* v. *Redding*, 59 Mich. 331.)  Even if the defendant were mistaken, as alleged by him and found by the court, he would not upon that ground be entitled to any relief, as the mistake, if mistake there were, was the result of the defendant's gross negligence, and equity will not grant relief where the mistake is the result of negligence.  (Kerr on Fraud and Mistake, Am. ed. 1872, p. 406.)  The means of inquiry were at least equally open to both parties, and in such a case if the mistake is not the result of misrepresentation on the part of the other party, no relief can be granted on account of the mistake.  (Kerr on Fraud and Mistake, foot-note, p. 407; *Crowder* v. *Langdon*, 3 Ired. Eq. 476; *Belt* v. *Mehen*, 2 Cal. 159, 160; 56 Am. Dec. 329; *Eastman* v. *Hobbs*, 26 Ala. 741; *Wood* v. *Patterson*, 4 Md. Ch. 335; *Western etc. Bank* v. *Farmers' etc. Bank*, 10 Bush, 669; 1 Story's Eq. Jur., secs. 148, 150.)  The court erred in allowing defendant to file the amended cross-complaint.  An amendment after trial to make the pleadings conform to the proofs cannot be allowed when it changes substantially the claim or defense. (*Egert* v. *Wicker*, 10 How. Pr. 193–198.)  The power to allow an amendment to make the pleadings conform to the proofs should be "sparingly used."  (*Field* v.

*Hawxhurst,* 9 How. Pr. 77.) Amendments can only be granted when the complaint is defective in parties, or in prayer for relief, or in the omission of or mistake as to a fact or circumstance connected with the substance, but not forming the substance itself. (*Piercy v. Beckett,* 15 W. Va. 444.) A petition cannot be amended so as to allege a new cause of action. (*Barnes v. Prewitt,* 28 Mo. App. 163.) A cause of action based on fraud is distinct from that founded on mistake, and it is not competent upon the trial to substitute one for the other. (*Barnes* v. *Quigley,* 59 N. Y. 265; *Salisbury* v. *Howe,* 87 N. Y. 128; *Dudley* v. *Scranton,* 57 N. Y. 424; *Ross* v. *Mather,* 51 N. Y. 108; 10 Am. Rep. 562; *Mercier* v. *Lewis,* 39 Cal. 532.) There was no trust relation existing between the plaintiff and defendant, as she was a wife *de facto,* and not *de jure,* and therefore the rules of law applicable to her case are not those which obtain under the code between *de jure* husband and wife, but those which prevailed in courts of equity, prior to the code, between parties standing in the relation of husband and wife, which rules are as follows: Although gifts from a wife to a husband should be jealously and closely scrutinized, yet undue influence will not be presumed, but must be shown by direct proof, or by circumstances from which it might reasonably be inferred. (*Hardy* v. *Van Harlingen,* 7 Ohio St. 208; *Dixon* v. *Dixon,* 22 N. J. Eq. 91; notes to *Huguenin* v. *Baseley,* 2 Lead. Cas. Eq., 4th Am. ed., pt. 2, p. 1215.) A *fortiori,* undue influence will not be presumed where the gift is from the husband to the wife. The exercise of the influence springing from the family relation is not undue, even though it be pressed to the extent of unreasonable importunity. (*Hazard* v. *Hefford,* 2 Hun, 445; *Dean* v. *Negley,* 41 Pa. St. 312; *Gardiner* v. *Gardiner,* 34 N. Y. 155; *Jackson* v. *Jackson,* 39 N. Y. 153.) Improper influence should not be inferred when the act itself may just as naturally have been induced by motives of affection, gratitude, or justice, or all of these. (*Callery* v. *Miller,* 1 N. Y. Sup. Ct. 88, 89.) The influence arising

from gratitude, affection, or esteem is not undue. It must be such as practically to destroy free agency. The party must stand *in vinculis*. (*Kinne* v. *Johnson*, 60 Barb. 69, 79; *Hale* v. *Cole*, 31 W. Va. 576; *Small* v. *Small*, 4 Me. 220; 16 Am. Dec. 253.) The relation of husband and wife certainly is not fiduciary. (Bigelow on Fraud, 353.) The respondent's contention that the deeds should be set aside upon the ground of undue influence cannot be sustained, as undue influence was not in issue. Undue influence must be expressly pleaded. (*Caldwell* v. *Boyd*, 109 Ind. 447; *Farmers' etc. Co.* v. *Canada etc. R'y Co.*, 127 Ind. 250; *Priest* v. *Way*, 87 Mo. 16. See *Goodwin* v. *Goodwin*, 59 Cal. 560.) The contention of the respondent that the fact that the absentee is dead will be presumed from the lapse of time mentioned in the statute we admit to be law. But in this case it is the defendant himself, and not his first wife, who is the "absentee." (See *Spurr* v. *Trimble*, 1 A. K. Marsh. 279; *McKee* v. *Copeland*, 2 Cent. L. J. 813; *Williams* v. *Williams*, 63 Wis. 58; 53 Am. Rep. 258.) Besides which, the mere failure to hear even from an absent person for seven years who was known to have a fixed place of residence abroad, and if the first wife went to live with her parents she was known to have a fixed place of residence abroad, would not be sufficient to raise a presumption of his death, unless due inquiry had been made for him at such place without getting tidings from him. (See 1 Am. & Eng. Ency. of Law, 41.)

*D. P. Hatch*, and *John D. Bicknell*, for Respondent.

There was a trust relation existing between the plaintiff and defendant during the period in which the transactions here involved took place, and the transactions are therefore presumed to have been entered into by the beneficiary under undue influence. (Civ. Code, secs. 158, 2235; *Brison* v. *Brison*, 75 Cal. 525; 7 Am. St. Rep. 189.) The defendant is entitled to have the deed to the plaintiff set aside for mistake and failure of consideration. The belief that the first wife was dead, when such was not the case, is a mistake of fact which will readily

be relieved against in equity. (Bump's Kerr on Fraud and Mistake, 405, 406; 2 Pomeroy's Eq. Jur., secs. 852, 854; Bispham's Equity, 4th ed., sec. 190.) The belief that the grantee of the defendant was his lawful wife at the time he made the deed is a mistake of law, for which the grantor is entitled to have the deed canceled. Again, the moving consideration for the deed was the notion that a valid and binding marriage existed between the parties. There being no such marriage, the consideration fails, and the property must be restored. (2 Pomeroy's Eq. Jur., sec. 849; *McCarthy* v. *Decaix*, 2 Russ. & M. 614; 11 Eng. Ch. 614; *Coulson* v. *Allison*, 2 Giff. 279; affirmed 2 De Gex, F. & J. 521; 63 Eng. Ch. 521; *Chapman* v. *Bradley*, 33 Beav. 61; *Kennell* v. *Abbott*, 4 Ves. 802; *Boyd* v. *De la Montagnie*, 73 N. Y. 498; 29 Am. Rep. 197.) The deed should be set aside for undue influence. Under such circumstances as are disclosed in this case, the burden is upon the grantee of satisfactorily establishing good faith and complete disclosure on her own part. If she fails to do so, the conveyance must be set aside. (*Gibson* v. *Jeyes*, 6 Ves. 266, 278; *Hoghton* v. *Hoghton*, 15 Beav. 278, 298; *Cooke* v. *Lamotte*, 15 Beav. 234, 239; *Brown* v. *Kennedy*, 33 Beav. 133, 140; *Billage* v. *Southee*, 9 Hare, 534; *Rhodes* v. *Bates*, L. R. 1 Ch. 252, 257; see also 2 Pomeroy's Eq. Jur., secs. 956, 963; 1 Story's Eq. Jur., secs. 307, 308; *Brison* v. *Brison*, 75 Cal. 525; 7 Am. St. Rep. 189.) The relation of the parties to each other was confidential in fact as well as in law. The betrayal of such confidence is constructively fraudulent, and gives rise to a constructive trust. This is independent of any element of actual fraud. (1 Story's Eq. Jur., secs. 258, 307.) The law, from considerations of public policy, presumes such transactions to have been induced by undue influence. (Civ. Code, sec. 2235; Bigelow on Fraud, ed. 1888, pp. 261, 262; Bump's Kerr on Fraud and Mistake, 151; Hovenden on Fraud, 18.) While it is not impossible that a gift between persons in such relations may be valid, yet all such transactions are constructively fraudulent, and are only to be upheld

upon a showing of special circumstances. (*Huguenin* v. *Baseley*, 2 Lead. Cas. Eq., pt. 2, p. 1156, and cases cited. See also *Hatch* v. *Hatch*, 9 Ves. 296.) The foregoing cases show that large gifts of property to persons who stand in confidential relations to the donors are viewed with suspicion by the general law. While courts of equity may look with favor upon suitable provision made by the husband for his wife, yet they do not favor a gift, operative during lifetime, of all his property by a husband to his wife, unless under exceptional circumstances. (2 Story's Eq. Jur., sec. 1374; *Price* v. *Price*, 1 De Gex, M. & G. 308; 50 Eng. Ch. 308; *Warlick* v. *Warlick*, 86 N. C. 139; 41 Am. Rep. 453.) The grantor is entitled to have the deed set aside for breach of confidence, and fraud. If the grantee procured the deed to be made, with the thought that possibly the first wife might be found to be alive, and with the intent to secure the property to herself should this prove to be the case, and she concealed these thoughts and intentions from the grantor, this is such a fraud as will give the grantor the right to have the conveyance canceled. (*Dickerson* v. *Dickerson*, 24 Neb. 530; 8 Am. St. Rep. 213; *Meldrum* v. *Meldrum*, 15 Col. 478; *Snodgrass* v. *Snodgrass*, 40 Kan. 494.) The fact that the woman alleges in her answer to the cross-complaint the consideration to be something different from the consideration recited in the deed is, owing to the confidential nature of the relation existing between the parties, a suspicious circumstance, calling upon her to affirmatively show the fairness of the transaction. (Kerr on Fraud and Mistake, 192; citing *Watt* v. *Grove*, 2 Schoales & L. 492, 502; *Griffiths* v. *Robins*, 3 Madd. 191, 192; *Gibson* v. *Russell*, 2 Younge & C. Ch. 104; *Ahearne* v. *Hogan*, Drury, 310, 326. See also *Shipman*, v. *Furniss*, 69 Ala. 555; 44 Am. Rep. 528.) The grantee, having acquired the property by virtue of a marital relation existing between the parties, and on the assumption that a valid marriage existed, will not be permitted to repudiate the relation, which is but a voidable one, and retain the benefits acquired by its means.

(*Donnelly* v. *Donnelly's Heirs*, 8 B. Mon. 113.)   As there is a presumption of law relating to the fact of death, the fact that the absentee is dead will be presumed from the lapse of time mentioned in the statute. (*Davie* v. *Briggs*, 97 U. S. 628.  See *Montgomery* v. *Bevans*, 1 Saw. 653; *Stevens* v. *McNamara*, 36 Me. 176; 58 Am. Dec. 740; *Smith* v. *Knowlton*, 11 N. H. 191; *Flynn* v. *Coffee*, 12 Allen, 133; *Loring* v. *Steineman*, 1 Met. 204; *McDowell* v. *Simpson*, 1 Houst. 467; *Whiting* v. *Nicholl*, 46 Ill. 230; 92 Am. Dec. 248; *Spurr* v. *Trimble*, 1 A. K. Marsh, 278; *Doe* v. *Flanagan*, 1 Ga. 538; *Smith* v. *Smith*, 49 Ala. 156; *Primm* v. *Stewart*, 7 Tex. 178; *Gibbes* v. *Vincent*, 11 Rich. 323; *Stouvenel* v. *Stevens*, 2 Daly, 319.)

BELCHER, C. — In July, 1873, the plaintiff and defendant intermarried at the city of Los Angeles, in this state. In May, 1890, the plaintiff commenced this action to have her marriage with defendant annulled, upon the ground that at the time it was contracted he had another wife living, and that such former marriage had never been dissolved by a decree of divorce or otherwise. The defendant, by his answer, admitted a prior marriage, but alleged that for five successive years immediately preceding his marriage with the plaintiff his former wife had been absent from him, and was not known by him to be living, and that he believed she was dead.

Defendant also filed a cross-complaint in which he alleged that in the month of February, 1864, he was married to one Elizabeth Wharton, in Australia, and that they lived together as husband and wife for the period of one year, when they separated by mutual consent, and he, in 1865, removed thence to the state of California, where he had ever since resided; that for more than seven years prior to July, 1873, when he married the plaintiff, he had not heard from his former wife, although he made diligent inquiry and wrote to her several times to know of her whereabouts, and also wrote to several others, her relatives, friends, and acquaintances, inquir-

ing as to her whereabouts, and, receiving no answer to any of his letters, he believed her to be dead.

He further alleged that in January, 1884, in consideration of love and affection, and to secure to the plaintiff and to their children a competency, and to save the making of a will and the expense of probate in case of his death, and believing at the time that the plaintiff was his lawful wife and would continue their marital relations in the future as she had in the past, he, at her earnest and frequent solicitation, made, executed, and delivered to her a deed of certain real property, situate in the city of Los Angeles, a copy of which deed is set out; that again, in April, 1888, for the same consideration, and reposing implicit confidence in the plaintiff as his lawful wife, and merely for the purpose of correcting the former deed, he, at plaintiff's repeated request and solicitation, executed and delivered to her another deed of the same property, a copy of which last deed is also set out; that the property described in the deeds was of the value of one hundred and twenty-five thousand dollars, and was all the property owned by defendant at the time of the execution of the first deed, except a piece of property in the county of San Diego, which was afterwards sold and the proceeds applied toward the payment of a balance due on the property conveyed, and for improvements thereon; that at the time of the execution and delivery of the said deeds to plaintiff, she had been fully informed of defendant's former marriage to Elizabeth Wharton, and that they had separated by mutual consent, and that defendant had not heard from his former wife for more than seven years prior to his marriage with the plaintiff, and believed her to be dead, and that plaintiff, with full knowledge of all these facts, solicited and requested the conveyance of the property from defendant, "with intent on her part to deceive this defendant, and did deceive this defendant in this, that she did intend to hold and retain said property as her own and for her separate use and benefit, and to procure as soon as she was able a nullity of her marriage with this de-

fendant, if the fact should be that said former wife was living, and thereby to defraud this defendant out of all of said property so conveyed"; that plaintiff's conduct toward defendant prior to the execution of said conveyances was that of a dutiful, faithful, and devoted wife, and he had implicit confidence in her that she would continue such relation to him during their lives; that said conveyances were executed and delivered by defendant to plaintiff "under a mistake of the facts as they existed at that time, and had it not been for said mistake of facts, and that this defendant believed his former wife to have been dead, and the plaintiff in this action was his lawful and legal wife, and having implicit confidence and faith in her, and that she would continue their marital relations as heretofore, he would not have made, executed, or delivered said deeds of conveyance, or either of them, as hereinbefore set forth"; that defendant requested plaintiff, before the commencement of this action, to reconvey to him the property he had so conveyed to her, and that she refused to reconvey the same, or any part thereof; that defendant did not know that his former wife was living until December, 1890, when he ascertained that fact from her deposition taken in this case, although he had what purported to be a declaration or statement make by her in September, 1889, under the name of Ann Walker, and received by him in November, 1889; that upon receiving such declaration or affidavit, he delivered it to the plaintiff, who, in May following, commenced this action to have their marriage annulled.

It is then alleged that there were two children, one a boy sixteen years of age, and the other a girl ten years of age, the issue of the marriage between plaintiff and defendant, and that plaintiff was not a fit or suitable person to have the care and custody of said children, and that defendant was a fit and proper person to have the care and custody of them.

And the prayer is, that the said deeds be set aside and vacated, and that the property described therein be ad-

judged to be the property of defendant, and that plaintiff be required to execute a deed thereof to defendant, and also that defendant have the care, custody, control, and education of the said children.

The plaintiff, by her answer to the cross-complaint, denied, among others, all of its averments to the effect that defendant was induced to execute and deliver the said deeds by fraud and deceit on her part, or by mistake on his part.

When the case was called for trial, the parties stipulated, as to the children, that the custody of the son should be given to the defendant, and that of the daughter to the plaintiff. It was also stipulated that each party might introduce all of his or her testimony, subject to the right of the other party, after all the testimony should be put in, to object to or move to strike out any part of it. Counsel for defendant then stated that if they were so advised, they would, after all the evidence should be introduced, file an amended cross-complaint to fit the evidence put in, and counsel for plaintiff stated: " We have no objection to your filing an amendment to the cross-complaint at any time to-day, and that it may be considered as answered."

In support of her side of the case, the plaintiff testified that she was married to the defendant on the tenth day of July, 1873, at the city of Los Angeles; and she read in evidence the deposition of his former wife, in which deponent stated that she was born and had always lived in Australia; that she first met defendant at Forbes, in the colony of New South Wales, where her parents were living, and near which place he was working as a miner; that she was married to defendant at Orange, in that colony, 192 miles west of Sidney, on the eleventh day of February, 1864; that she and defendant lived together, and cohabited as husband and wife, until December, 1865; that in January or February, 1866, she received a letter from him, dated at Sydney, in which he said he was about to go to America, and that she had never heard from him since; that a

female child, the issue of her marriage with defendant, was born to her in March, 1865, and that in 1866 she, with her child, left her then place of residence, and returned to her parents' house at Forbes, and that in June, 1873, she was again married to one James Walker, and had, as the issue of that marriage, six children.

The defendant then testified as a witness in his own behalf; and in rebuttal, the plaintiff and two other witnesses were called and testified.

The case was submitted for decision on the day the trial commenced, on briefs to be thereafter filed by the respective parties. Twelve days later, the defendant, after due notice, asked permission, and was allowed by the court, against the objections of plaintiff, to file an amended cross-complaint. To this cross-complaint the plaintiff, reserving her objection and exception to the order allowing the same to be filed, demurred, and answered at the same time.

Subsequently the court found all the facts of the case to be substantially as they are stated in the amended cross-complaint, and entered its decree dissolving the bonds of matrimony existing between the parties, and awarding to them the custody of the children in accordance with their stipulation, and adjudging that the deeds executed by the defendant to the plaintiff be vacated and set aside, and that the property described therein be allotted to them in equal shares, that is to say, that an undivided one-half interest in and to all of the lands and premises described in the deeds be awarded and allotted to the plaintiff, and a like interest to the defendant, and requiring the plaintiff to execute to the defendant a deed to an undivided one-half interest in the property within ten days after the entry of the decision.

From this judgment, and an order refusing a new trial, the plaintiff has appealed.

1. The appellant contends that her marriage with defendant was invalid and void from the beginning, and that no relations of trust and confidence, such as or-

dinarily arise between husband and wife, ever existed between them.   This position is rested upon the rule of the common law, that a marriage was void when one of the spouses had contracted a prior marriage which had never been dissolved by death, divorce, or otherwise.

But this rule of the common law has been changed in certain respects in this state by the codes.   Section 61 of the Civil Code provides as follows:—

"A subsequent marriage contracted by any person during the life of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning: . . . . 2. Unless such former husband or wife was absent, and not known to such person to be living, for the space of five successive years immediately preceding such subsequent marriage, or was generally reputed and was believed by such person to be dead at the time such subsequent marriage was contracted; in either of which cases the subsequent marriage is valid until its nullity is adjudged by a competent tribunal."

The appellant, however, contends that this change in the law does not affect the case or make valid her marriage, for the reason that defendant's former wife remained at her home in Australia, and was not *absent* from him, within the meaning of the statute, but he, having left her and come to California, was himself the absentee.   And it is said: "The 'absent' spouse is the spouse who has left his or her residence, home, or domicile."

The court found that "the said Elizabeth Wharton, then the wife of the said defendant, John Eugene Jackson, left the said defendant, Jackson, and went to live with her parents in Australia," and that afterwards the defendant came to this state.   This finding is supported by the testimony of the defendant, and must be accepted as stating the fact truly.   This being so, we think it must be held that the former wife was, in a legal sense, as really and truly absent from defendant as she would

have been if he had remained in Australia, but had continued to live separate and apart from her.

But conceding this view to be correct, it is earnestly insisted that there was no sufficient evidence to show that defendant did not know his former wife to be living for the space of five years before he married the plaintiff, or that he believed her to be dead.

The defendant testified: "I never heard from my former wife prior to November, 1889. I made efforts to hear from her from the time I separated from her until the time of my marriage with my present wife. These efforts were made as follows: It might have been a year or so after I arrived at San Francisco, I wrote to her and wrote to some friends of mine, making inquiries about her. I know it was within two years of the time that I arrived in San Francisco that I met an old miner who used to work with me on those mines, and he was familiar with the circumstances, and he informed me that she was dead. After writing and talking with him, I made no other effort to hear from her other than by writing. I wrote to several parties that I knew; got no answer from them at all. I got no answer from her. I believed her to be dead."

The court found that all the facts testified to by the defendant, in this regard, were true, and the finding cannot be disturbed here for want of evidence to justify it.

2. Appellant also contends that the findings as to the alleged fraud and mistake, under which the deeds were executed to the plaintiff, were not justified by the evidence, and if justified, that they did not warrant the conclusions of law that the deeds should be vacated and set aside and the property allotted to the parties in equal shares.

We do not think this contention can be sustained. The testimony on the part of defendant tended to show that the deeds were executed at the earnest and repeated request and solicitation of the plaintiff, and that she intended thereby to get all the property in her own name, so that if it should turn out that the former

wife was living, she could have her marriage annulled, and yet claim and hold the property in her own right; and that defendant, honestly believing his former wife to be dead, and having full confidence in the plaintiff as a true, dutiful, and affectionate wife, and expecting their marital relations to continue so long as both should live, yielded to her wishes and solicitations in every respect.

The Civil Code contains the following provisions: —

"Sec. 158. Either husband or wife may enter into any engagement or transaction with the other, or with any other person, respecting property, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other, as defined by the title on trusts."

"Sec. 2235. All transactions between a trustee and his beneficiary, during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence."

By these sections the relations between husband and wife are declared to be confidential, and all transactions between them respecting property are made subject to the same rules that control transactions between a trustee and his *cestui que trust.* One of these rules is, that a trustee must not use the influence which his position gives him to obtain any advantage of his beneficiary (Civ. Code, sec. 2231), and if he does, it is a fraud against the beneficiary (Civ. Code, sec. 2234) for which equity will grant appropriate relief. (*Brison* v. *Brison,* 75 Cal. 525; 7 Am. St. Rep. 189.)

In our opinion, therefore, there was evidence to justify the findings complained of, and they must be upheld.

3. It is objected that the court erred in permitting the amended cross-complaint to be filed after the case had been submitted for decision, because it raised new issues as to fraud, no such issues having been tendered

by the original cross-complaint; and also in denying
the plaintiff's motion, made after the amended cross-
complaint was filed, to strike out all those parts of de-
fendant's testimony tending to show fraud, upon the
ground that when the testimony was given there was
no issue as to fraud, and hence it was irrelevant and
immaterial.

Whether a party to a suit should be permitted to
amend his pleading after trial commenced, or not, is a
matter which is ordinarily addressed to the discretion
of the court, and the action of the court in granting or
refusing permission is never disturbed on appeal unless
it clearly appears that it abused its discretion. In this
case we see no abuse of discretion. The testimony was
all in, and it was proper that the pleadings be amended
so as to conform to it. But it is said that the plaintiff
did not, in giving her testimony, deny defendant's
charges of fraud, because they were not based on any
issue in the case, and that by permitting the amend-
ment and refusing to strike out the portions of defend-
ant's testimony objected to, the court prevented her
having that fair and impartial trial to which she was
entitled.

If it be true that the plaintiff could and would have
denied any of the defendant's charges which she did
not deny, provided the amended cross-complaint had
been on file at the time, then she might, and we think
should, have asked to have the case reopened for that
purpose. If she had done so, doubtless her request
would have been granted. In the absence of such a
request, we see no reversible error in the rulings of the
court.

4. It is further objected that in dividing the property
equally between the parties, the court should have ascer-
tained whether there was any other community prop-
erty at the date of the decree, and if so, should have
divided all of it, and not that only which was described
in the deeds. Conceding this to be so, still we cannot
say that there was any error. It does not clearly ap-

pear that there was any other community property, and if there was, the attention of the court should have been directly called to it.

5. It is suggested that the decree is not in proper form to effect the ends probably intended by the court, for the reason that it first vacates and sets aside the deeds, then allots an undivided one half of the property to the plaintiff, and the other undivided half thereof to the defendant, and then requires the plaintiff to execute a deed to an undivided one half of the property to the defendant. It is said that the deed to be executed by the plaintiff may be claimed to be a deed to the undivided half allotted to her, thus giving the defendant the whole property and leaving nothing to her.

The decree was not happily drawn, but its obvious meaning is to divide the property equally between the parties, and to vest in each of them the title to an undivided half of it. The deed required of the plaintiff was not to convey her half, and does not affect it.

What has been said above disposes of all the material points in the case. We have carefully read the very elaborate and able briefs presented by counsel on both sides, but have not deemed it necessary to follow them at length, or to cite and comment upon the numerous authorities referred to.

Looking at the whole record, we find no good ground for reversal, and therefore advise that the judgment and order be affirmed.

VANCLIEF, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

HARRISON, J., concurring. — In my opinion, the finding of the court, that the former wife of the defendant "left" him, is not sustained by the evidence. The defendant alleged in his answer that they "separated by mutual consent, and this defendant, in the year 1865, removed to the state of California." Upon the trial, he

testified to the same effect, saying: "I left in 1865. She left and went home to her father and mother. I came on to Sydney, and after a while came to San Francisco."

His testimony that she "left," not that she left *him,* and that he "came on to San Francisco," accords with the allegation in the answer that they separated by mutual consent. There is no other testimony in reference to this subject, except that of the former wife, which is to the effect that he left her. If they did separate by mutual consent, she was not "absent" from him in the sense in which that term is used in subdivision 2 of section 61 of the Civil Code.

I do not, however, think that this finding of the court, or the construction given by the commissioner to the word "absent," is material to the determination of the action. It may be conceded that the parties to this action entered into the contract of marriage with each other under such circumstances that it was valid to all intents and purposes until annulled by decree of the court; but the fact that the defendant had at that date a former wife living, from whom he had not been divorced, gave to the plaintiff the right to have the marriage annulled upon the discovery of such fact. (Civ. Code, sec. 82, subd. 2.) Upon its dissolution, there would arise the same equitable grounds for an equal division of the property that had been acquired by the parties during the existence of the relation of husband and wife as would exist upon the dissolution of any valid contract of marriage for a cause other than adultery or extreme cruelty. I therefore concur in affirming the judgment and order denying a new trial.

PATERSON, J., concurred.

Rehearing denied.