## CHARLES D. SEMPLE *v.* GEORGE HAGAR *et als.*

COMPLAINT FOR RELIEF ON GROUND OF FRAUD.—In an action brought to vacate a patent for land on the ground that its issuance was procured from the Government by false suggestions, fraudulent concealments, and by misrepresentations, the acts of fraud and misrepresentation on which the general charge is based must be specified in the complaint, or it will not state facts sufficient to constitute a cause of action.

JUDICIAL NOTICE OF PROCEEDINGS TO OBTAIN PATENT.—The Supreme Court will take judicial notice of the fact, that the claimant of land under a Mexican or Spanish grant, presented his petition to the Board of Land Commissioners for the confirmation of his title, and that the same was confirmed by said Board, or the District or Supreme Court of the United States, before the patent was issued.

FACTS FOUND BEFORE CONFIRMATION OF GRANT.—The Board of Land Commissioners, or the United States Court, in passing upon and confirming a Mexican or Spanish grant of land, must necessarily find, not only that the alleged grantee was in fact the grantee of the Mexican or Spanish Government, but also that he was competent to take the grant.

A DECREE CONFIRMING A GRANT OF LAND.—A decree of the Board of Land Commissioners or of a Court of the United States, confirming a Mexican or Spanish grant of land, cannot be attacked in another action, on the ground that the grantee was not competent to take the grant, by reason of having received a grant of more than eleven square leagues of land before he obtained the grant confirmed.

SUIT TO VACATE A PATENT FOR LAND.—A patent issued by the United States for a confirmed Mexican or Spanish grant will not be vacated by a State Court because the grantee had received a donation of more than eleven square leagues of land from Mexico or Spain before he received the grant confirmed.

JUDGMENTS OF FEDERAL COURTS.—State Courts cannot set aside or indirectly review the judgments of the Federal Courts made in matters of which the Federal Courts have jurisdiction.

APPEAL from the District Court, Tenth Judicial District, Colusa County.

Plaintiff appealed from the judgment of the Court below dismissing the action.

The other facts are stated in the opinion of the Court.

*Semple,* and *Edwards,* for Appellant.

The State Courts have jurisdiction of patents issued by the

United States for land within the State. (See *Sarpy* v. *Papin*, 7 Missouri, 503 ; *Allison* v. *Hunter*, 9 Ib. 741 ; *Barry* v. *Gamble*, 8 Ib. 88 ; *Wright* v. *Rutgers*, 14 Ib. 585 ; *Gorman* v. *Johnson*, 20 Ib. 108, etc.; *Arnold* v. *Grimes & Chipman*, 2 Iowa, 1 ; *Waterman* v. *Smith*, 13 Cal. 416 ; *Doll* v. *Meador*, 16 Cal. 330.)

The demurrers admit all the obligations of the bill; therefore, for the purposes of this trial, it is true that twelve square leagues of land in the Californias were granted to Manuel Jimeno Casarin prior to the date of the grant in question.

The Supreme Court of the United States, in the case of the *United States* v. *Hartnell's Executors*, 22 Howard, 286, having declared, in unequivocal terms, that such a grant was void—there being no power in the California Governors to make grants except as directed in the law of 1824—(see *United States* v. *Vallejo*, 1 Blackstone, 541)—the only question is, whether a valid patent can be issued on a void grant ? Has a void thing any life, or a germ in it out of which a living thing can be reared ? Can the adjudication under the Act of 1851 *create* a grant ? The Governors of California had already exhausted all the official power given them by law, in favor of Jimeno, by granting him twelve leagues of land, and by inevitable sequence the act of issuing *this* grant was merely the act of an individual, and could have no more force than if a paper of the same purport had been signed and delivered by any other citizen of the Californias.

On this point we are sustained by the leading cases of *Jackson* v. *Lawton*, 10 Johnson, 25 ; and *Patterson* v. *Winn*, 11 Wheaton, 380, re-affirmed in *Doll* v. *Meador*, 16 Cal. 330.

*A. C. Whitcomb,* for Respondent Hagar.

The object of this action is "to repeal and vacate a patent issued by the United States;" and it has been held by this Court over and over again, (see *Leese* v. *Clark*, 18 Cal. 571, 572, 575; *Leese* v. *Clark*, 20 Cal. 423,) that a patent is a record of the Government, showing its action

and judgment upon the title of the patentees; and "upon all the matters of fact and law essential to authorize its issuance it imports absolute verity; and it can only be vacated and set aside by direct proceedings instituted by the Government, or by parties acting in the name and by the authority of the Government." (18 Cal. 572.) As the vacating and setting aside of a patent is, therefore, a proceeding to which the United States must be a party, and as the Federal Courts have exclusive jurisdiction of actions to which the United States is a party, there is no escape from the conclusion that the District Court of the Fifteenth Judicial District of this State had no jurisdiction over the question of repealing and vacating the patent.

By the Court, RHODES, J.

The appellant denominates this action "a bill in equity, brought to repeal and vacate a patent issued by the United States, to Thomas O. Larkin and John S. Missroon for the Jimeno grant," or, as he states in another portion of his brief, and which amounts to the same thing in substance, a bill "to quiet the title to the Colus grant by vacating the Jimeno grant."

He states in his complaint that the Colus grant was granted to John Bidwell; that Bidwell conveyed the grant to the appellant; that in 1855 the title was finally confirmed to him; that the survey of the grant was approved by the United States District Court in January, 1860; that he has sold divers lots and tracts of the grant, and that he now is in possession of the unsold part of the grant. He further states that prior to November, 1844, certain Governors of the Californias granted to Manuel Jimeno Casarin two ranchos—called "Sal si Puedes" and "Santa Paula y Saticoy"—containing in the aggregate twelve Spanish leagues of land; that "the said Manuel Jimeno Casarin, well knowing that he had actually received, as donations from the Mexican nation, twelve square leagues of land within the Californias, and, well knowing that

it was in violation of the laws of Mexico for any one individual to own or hold more than eleven square leagues of land, yet contriving to deceive and defraud the Mexican nation, did fraudulently and unlawfully, on the 4th of November, 1844 petition for, and Manuel Micheltorena, then Governor of the Californias, did fraudulently and unlawfully and upon false suggestions grant to the said Manuel Jimeno Casarin another rancho, commonly called 'Jimeno Rancho,' containing eleven leagues of land," etc.; that Manuel Jimeno Casarin then held the two ranchos formerly granted to him; that he transferred the Jimeno grant to Larkin and Missroon; that "some proceedings in some suit or controversy" were had between them and the United States; that in 1862 a patent founded on the grant was issued to them for the Jimeno Rancho, and that they procured the patent to be issued "by false suggestions, fraudulent concealments and misrepresentations." He further states that the Jimeno grant overlaps a portion of the Colus grant—that it is a cloud upon his title in the Colus grant, and that Hagar, one of the respondents, claims that portion of the Jimeno grant that overlaps the Colus grant.

The respondents demurred to the complaint on several grounds, two of which were that the Court had no jurisdiction of the subject of the action, and that the complaint does not state facts sufficient to constitute a cause of action, and the demurrers were sustained, and the plaintiff failing to amend, judgment was rendered dismissing the action.

The object of the action is to impeach and set aside the patent for the Jimeno grant, or to avoid so much of it as covers lands within the Colus grant, and the ground of invalidity alleged against the patent is, that Larkin and Missroon procured it to be issued by "false suggestions, fraudulent concealments and by misrepresentations;" but the acts of fraud and misrepresentation on which the general charge is based, are not specified, and for that reason the complaint is defective in not stating the requisite facts. But we do not intend to rest our decision on that ground. It is charged that Jimeno committed a fraud upon the Mexican Government in procuring

the Jimeno grant, while he was the grantee and the owner of two other grants containing over eleven leagues of land, and that is the fraud upon which the appellant relies, and which he claims tainted all the subsequent proceedings down to and including the patent.  It may be admitted, for the purposes of the case, that Larkin and Missroon had a knowledge of this fraud—though it is not so stated in the complaint—and that they not only did not inform the Courts before which the proceedings were had for final confirmation, or the executive officers who issued the patent, of the facts constituting the fraud, but that they studiously misrepresented the facts to those tribunals and officers.  We deem it unnecessary in the present aspect of the case to determine the points argued by counsel, whether the United States are proper parties, or whether the appellant, not having received a patent for his lands, occupies such a position, as the assignee or grantee of the Government, that he can sue either in the name of the United States or in his own name.  But conceding that he is the proper party, the inquiry arises whether the facts as stated, and as we have admitted for the purposes of the case, constitute such a cause of action as would authorize the Court to order the patent vacated.

The Court will take judicial notice that, according to the provisions of the Act of Congress of March 3, 1851, every person claiming lands in California, by virtue of any right or title derived from the Spanish or Mexican Government, should present his petition for the confirmation of his title to the Board of Land Commissioners, and that such proceedings must be had thereupon, before said Board or the District or Supreme Court of the United States, that a final decree confirming the title of the claimant to the land must be entered before the patent for the land could be issued.  A patent could not be issued for the land claimed under a Mexican grant, unless such proceedings were first had for the confirmation; and it is not pretended that they were not had in respect to the Jimeno grant.  The patent was issued only in pursuance of the decree of confirmation, and for the purpose of carrying it into effect.

In the language of Mr. Chief Justice Field, in speaking of the operation and effect of such a patent: "It is the last act of a series of proceedings taken for the recognition and confirmation of the claim of the patentees to the land it embraces, the first of which was the petition to the Board of Land Commissioners." (*Leese* v. *Clark*, 18 Cal. 535.) The decree of final confirmation was as essential to the patent as a judgment to an execution. The appellant says that "some proceedings were had in some suit or controversy between said Larkin and Missroon and the United States, and that, on the —— day of ——, 1862, the United States Government issued a patent founded on said fraudulent grant to said Larkin and Missroon," and, as before remarked, it is not pretended that the proceedings required by the Act of Congress were not had.

The Board or the Court, in passing upon the claim and confirming it, must of necessity have found as a fact, not only that Jimeno was the grantee of the Mexican Government, but also that he was competent to take the grant. True, this may not have been done in direct terms, as in the case of *United States* v. *Reading*, 18 How. 1, and *United States* v. *Hartnell's Executors*, 22 How. 286, and other cases; but the fact must have been ascertained, at least by implication. The fact is as necessary to the confirmation of the grant as the fact that the land granted was situated within California, and must have been and was judicially determined by the Court that pronounced the decree; otherwise, we would have the case of a grant without a grantee. The only forum in which this fact can be found, or the questions relating to it investigated, during the series of proceedings that end with the patent, is the Board of Land Commissioners or the United States District or Supreme Court. Their jurisdiction of all the matters touching the claim of the petitioner to the land and of proceedings for final confirmation is plenary and exclusive. The appellant seeks to set aside the patent on the ground that the decree, in pursuance of which it was issued, was rendered in confirmation of a grant that had no legal existence—that was made by the Governor of California contrary to law; and the

suit is in effect a proceeding in a Court of this State to set aside the decree of final confirmation, entered in the proper Court of the United States; for the facts alleged in the complaint do not tend to show that the patent was improperly issued upon a valid decree, but that it was issued upon a decree that ought not to have been rendered, if the true state of the facts respecting the grant had been before the Court pronouncing the decree—a decree that was procured by the fraudulent concealment and misrepresentation of the claimants in respect to a fact that was material to the issues in the case.

The old and very general rule on this subject is stated by Mr. Chief Justice de Grey in *Duchess of Kingston's Case*, 11 Har. State Trials, 262: " But if it (the judgment) was a direct and decisive sentence upon the point, and as it stands, to be admitted as conclusive evidence upon the Court, and not to be impeached from within, yet like all other acts of the highest judicial authority, it is impeached from without. Although it is not permitted to show that the Court was mistaken, it may be shown that they were misled. Fraud is an extrinsic collateral act, which vitiates the most solemn proceedings of Courts of justice." Although the strictness of the rule has been in many cases modified, and parties have been permitted to obtain relief in equity against judgments and decrees obtained by fraud and imposition, yet if it appear that the defendant had knowledge of the fraud in time to have availed himself of it in his defense, and neglected to do so, or if by reasonable diligence he could have ascertained and proven the true state of the facts, in respect to which the fraud is alleged, and neglected to make the proof, the Court will not grant him relief. (*Le Guen* v. *Governeur and Kemble*, 1 J. Cases, 465 ; *Marine Ins. Company* v. *Hodgson*, 7 Cranch. 332; Will. Eq. 160.) It not only does not appear that the United States did not know of the grants made to Jimeno prior to the making of the Jimeno grant, but from the fact that they succeeded the Mexican Government in California, and came into possession of the archives of the former Government, every presumption is in favor of their having knowledge of the prior grants, and no fact is stated to

rebut that presumption. The Government having neglected to avail itself of the prior grants to Jimeno as a defense, no one will be permitted after the final decree, to set up the same facts, as an independent ground for relief.

Admitting that relief might be granted in a proper case with the proper parties, can the Courts of this State set aside, or indirectly review the decisions of the Federal Courts? This is not an open question. In *Peck et al.* v. *Jenness et al.*, 7 How. 624, Mr. Justice Grier, in delivering the opinion of the Court, says: "It is a doctrine of the law too long established to require citation of authorities that when a Court has jurisdiction it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every Court; and when the jurisdiction of a Court and the right of a plaintiff to prosecute his suit in it have once attached, the right cannot be arrested or taken away by proceedings in another Court." (See also *United States* v. *Peters*, 5 Cranch. 115; *Freeman* v. *Howe*, 24 How. 450; *United States* v. *Booth*, 21 How. 506; *Mott* v. *Smith*, 16 Cal. 533.)

The decision in this case does not in any degree impair the jurisdiction of the State Courts to pass upon and determine the rights of parties claiming under conflicting patents issued by the General Government in pursuance of decrees of confirmation, but the jurisdiction is denied to them to attack or collaterally review the decisions of the Courts of the United States, made in matters of which they have the acknowledged jurisdiction.

Judgment affirmed.

SAWYER, J., concurring specially:

I concur in the judgment.