63   39
99   461

[Department One.—January 16, 1883.]

## SAMUEL B. MARTIN, RESPONDENT, v. MARTIN DURAND, ET AL., APPELLANTS.

LIEU LANDS— STATE SELECTION—ACT OF CONGRESS. — A selection of land made by the State in lieu of a sixteenth or thirty-sixth section, such land having been certified over to the State prior to the passage of the Act of Congress of March 1, 1877, commonly known as the Booth Act, is confirmed by that act, although the land in lieu of which the selection was made was at the time of the selection included within the final survey of a Mexican grant, and the land selected was at the same time within what was claimed to be the limits of a Mexican grant, but finally excluded therefrom.

PLEADING — DAMAGES — USE AND OCCUPATION — FINDING. — In an action of eject-
ment a general averment of and prayer for damages in a specified sum for the
unlawful withholding of the premises are sufficient to support a judgment for
damages, at least in the absence of a special demurrer or objection to the
evidence on the subject; and a finding as to the value of the use and occupation
of the premises, no attack being made upon it in the court below, is conclusive
as to the amount of the damages.

APPEAL from a judgment of the Superior Court of the city
and county of San Francisco, and from an order refusing a new
trial.

The action was ejectment. The plaintiff claimed under the
State, and a judgment was rendered in his favor.

*Mich. Mullany,* for Appellants.

*L. Aldrich,* and *E. D. Wheeler,* for Respondent.

ROSS, J. — Upon the question of *title* the inquiry to be made
is: Was a State selection made in lieu of a sixteenth or thirty-
sixth section, and which had been certified over to the State
prior to the passage of the Act of Congress of March 1, 1877,
commonly known as the Booth Act, confirmed by that act, when
the land in lieu of which the selection was made was, at the time
of the selection, included within the final survey of a Mexican
grant, and when the land selected was at the same time included
within the claimed limits of a Mexican grant, although finally
excluded therefrom? We answer yes, by virtue of the second
section of the Act of March 1, 1877.

As is well known, the sixteenth and thirty-sixth sections of
land in each township in California were granted to the State
for school purposes by the Act of Congress of March 2, 1853.
(10 U. S. Stats. 244.) By the seventh section of that act indem-
nity was provided for such sections, or parts thereof, as might
be lost to the State by reason of settlement at the time of survey,
or because of reservation for public uses, or of being taken by
private claims. Experience showed that many of the sections
granted by the Act of 1853, were situated within the claimed
limits of private grants made by the Mexican government.
From the nature and number of those grants and of the pro-
ceedings required for their adjudication and the final determina-

tion of their boundaries, proceedings to that end, in most cases, were slow. The State proceeded to make many indemnity selections before it was definitely known whether the lands in lieu of which the selections were made had in fact been lost to the State. These selections were invalid, some for one reason, some for another. Nevertheless, through mistake or inadvertence, they were certified to the State by the land department of the general government. Of course, disputes in regard to the title to such lands were natural and frequent. To solve the difficulty Congress interposed and passed the Act of March 1, 1877. It is entitled "An act relating to indemnity school selections in the State of California," and confirms by its first section to the State, the title to the lands certified to it, known as school selections, which were selected in lieu of sixteenth and thirty-sixth sections lying within Mexican grants, of which grants the final survey had not been made at the date of such selection by the State.

This section, it is apparent, does not cover the case under consideration. But Congress further provided, in the second section of the act, "that where indemnity school selections have been made and certified to said State, and said selections shall fail by reason of the land in lieu of which they were taken not being included within such final survey of a Mexican grant, or are otherwise defective or invalid, the same are hereby confirmed and the sixteenth or thirty-sixth section in lieu of which the selection was made shall, upon being excluded from such final survey, be disposed of as other public lands of the United States; *provided*, that if there be no such sixteenth or thirty-sixth section, and if the land certified therefor shall be held by an innocent purchaser for a valuable consideration, such purchaser shall be allowed to prove such facts before the proper land office, and shall be allowed to purchase the same at one dollar and twenty-five cents per acre, not to exceed three hundred and twenty acres for any one person; *provided*, that if such person shall neglect or refuse, after knowledge of such facts, to furnish such proof and make payment for such land, it shall be subject to the general land laws of the United States. (19 U. S. Stats. 268.)

By this section Congress confirmed such indemnity school selections as had been made and certified to the State, and which

would fail by reason of the land in lieu of which they were taken not being included within the final survey of a Mexican grant, " or are otherwise defective and invalid."

At the same time provision was made that such confirmation should not apply to mineral lands, etc., nor extend to lands settled upon by any actual settler claiming the right to enter, not exceeding the prescribed legal quantity under the homestead or pre-emption laws; provided, that such settlement was made in good faith upon lands not occupied by the settlement or improvement of any other person, and prior to the date of cer-. tification of the land to the State by the department of the interior; and provided, further, that the claim of such set-tler be presented to the register and receiver of the district land office, together with proper proof, etc., within a certain time.

As the facts of the case before us do not bring the defendants within any of the exceptions contained in the act, nothing further need be said in regard to them.

Clearly, such selections as had been made and certified in lieu of sixteenth and thirty-sixth sections, lying within Mexican grants, of which grants the final survey had not been made at the date of the selection by the State, were confirmed; for such is the clear and unequivocal language of the first section of the act of Congress. Clearly, also, such selections as had been made and certified to the State, which should fail by reason of the land in lieu of which they were taken not being included within the final survey of a Mexican grant, were confirmed; for such is the clear and unequivocal language of the second section of the act. Equally clear and unequivocal is the language of section two, in which are confirmed such selections as were made and certified to the State, and which would fail by reason of other defects or invalidities than those previously enumerated. One such invalidity existed in the case under consideration, to wit, the selection of land at the time within the claimed limits of a Mexican grant, but which was finally excluded therefrom. Such defect clearly comes within the letter as well as the intent of the statute, which is a curative act, designed to quiet the pos-session and confirm the claim of those who in good faith pur-chased from the State, thinking they thereby got a title, but

who in law did not, and which upon well-settled principles should be liberally construed.

In addition to judgment for the restitution of the premises sued for, the court below gave the plaintiff judgment against the defendants for four hundred and fifty-four dollars and eighty-three cents as damages for their detention; and it is claimed on the part of the appellants that in this there was error; first, because there was no sufficient averment of damage, and secondly, because the plaintiff could not recover against the defendants jointly upon the facts of the case.

To the first of these objections it is sufficient to say that there was a general averment of, and prayer for two thousand dollars damages by reason of the alleged unlawful withholding of the property which — at least in the absence of a special demurrer to the pleading or objection to the evidence of damage — was sufficient. (*Dimick* v. *Campbell*, 31 Cal. 240.) The waiver alluded to by counsel only extended to such damages as accrued prior to November 1, 1878. (Finding 22.) The court below found the value of the use and occupation of the premises sued for subsequent to that date, to be the sum stated, for which plaintiff was awarded judgment. That finding was not questioned in the court below, and cannot be here; and if the value of the use and occupation of the premises by defendants constituted the damage or a part of the damage sustained by the plaintiff by reason of the unlawful detention, then the judgment for the sum mentioned was right; and of that there can be no doubt. (*Miller* v. *Myers*, 46 Cal. 535.)

Judgment and order affirmed.

McKEE, J., and McKINSTRY, J., concurred.

Hearing in Bank denied.