M. M. GREEN, APPELLANT, v. R. Y. HAYES ET AL.,
RESPONDENTS.

INDEMNITY SCHOOL LANDS — DEFECTIVE SELECTIONS — CONFIRMATION TO STATE — PREVIOUS SETTLEMENT — GOOD FAITH OF SETTLER — DECISION OF INTERIOR DEPARTMENT. — Under the act of Congress of March 1, 1877, confirming to the state the title to indemnity school lands the selections of which were defective or invalid, but excepting from the confirmation lands on which a *bona fide* pre-emption or homestead settlement had been made previous to the certification to the state, the question of the *bona fides* of such a previous settlement is one of fact, or of mixed law and fact, and the decision of the department of the interior thereon in a case involving the question is final.

ID. — PATENTEE FROM STATE — ACTION TO QUIET TITLE AGAINST — ALLEGATIONS OF FRAUD. — In an action by an alleged pre-emptor of such land, claiming title under a previous settlement, to quiet his title, as against a patentee from the state, and to have the title of the latter declared void on the ground that his application to purchase the land from the state was fraudulent, the facts constituting the fraud must be specifically alleged in the complaint.

ID. — DEFECTIVE APPLICATION TO PURCHASE — IMPEACHMENT OF PATENT — STATE TITLE. — In such an action, the plaintiff cannot question the validity of the patent to the defendant on the ground that his application to purchase was defective or irregular, because he is not seeking to obtain the title of the state.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion.

*F. H. Howard, Will D. Gould,* and *James H. Blanchard,* for Appellant.

*Wells, Van Dyke & Lee, C. E. Thom,* and *H. T. Hazard,* for Respondents.

BELCHER, C. C. — The only question presented in this case is as to the sufficiency of the complaint when tested by a general demurrer.

The action was brought to quiet the plaintiff's title to eighty acres of land in Los Angeles County, and the material facts alleged in the complaint are as follows: —

In March, 1868, one Andrew Jaughin made application to purchase the land in question from the state of California under the provisions of an act of the legislature passed April 27, 1863, and entitled "An act to provide for the sale of certain lands belonging to the state." His application was not made in conformity to the provisions of that act, and was fraudulent, and known to be so, when it was presented to the state locating agent for acceptance and approval. The land was within the exterior limits of a Mexican grant which had been regularly presented to and confirmed by the board of land commissioners and the United States courts, and it remained so, and was claimed by the Mexican grantees until the thirty-first day of October, 1871. The land was sought to be taken in lieu of a part of a sixteenth section, which at the time of the application was also within the limits of a Mexican grant, and had not, by final survey of the grant or otherwise, been ascertained or determined to be lost to the state.

Knowing all these facts, the state locating agent, conspiring with Jaughin to unlawfully divest the United States of the title to the land, fraudulently accepted the application, and on the 22d of April, 1868, selected and located the land in question in the name of the state of California, and for the benefit of Jaughin, as indemnity school land.

In May, 1870, the land was unimproved, uncultivated, and vacant public land; and on the sixth day of that month the plaintiff, being then a qualified pre-emptor, settled thereon as a pre-emption settler, with the intention of availing himself of the pre-emption laws of the United States, and erected a dwelling-house and made other valuable improvements thereon. After his settlement, and while the state selection and location was pending before the land department, he, by his attorneys, notified in writing the commissioner of the general land-office and Secretary of the Interior of his claim, and par-

ticularly called attention to the defects and illegalities of the state selection and location; but notwithstanding such notification, the commissioner and secretary approved the location, and listed the land to the state as indemnity school land, before the land in lieu of which it was taken was known to be lost to the state. Jaughin obtained a certificate of purchase for the land from the proper officers of the state, and assigned the same to R. Y. Hayes.

Hayes obtained a patent for the land from the state, and died. The defendants are his successors in interest.

The plat of the township in which the land is situated was first regularly and legally filed in the local land-office on the twenty-first day of November, 1871, and on the next day the plaintiff filed with the register and receiver his declaratory statement, and paid them the fees required therefor. Afterwards, having fully complied with the pre-emption laws, he offered to make proof before them of his settlement and improvements and residence upon the land, and his qualifications as a pre-emptor, and tendered the government price for the land, with all necessary fees; but the register and receiver rejected his tender of proofs and payment, and refused to allow him to enter the land because of the indemnity school selection, and for no other reason. Plaintiff appealed from the decision of the register and receiver to the commissioner of the general land-office, and afterwards, on the tenth day of March, 1876, the Secretary of the Interior made a decision to the effect that the list to the state was invalid and void, and no bar to the claim of the plaintiff. The plaintiff then, on the fourth day of April following, again appeared in the local land-office and proved up his claim, paid for and entered the land, and received his duplicate receipt. Afterwards, the Secretary of the Interior ordered a rehearing of the case to be had, in order that the state of California might appear and contest the plaintiff's right to the land.

A rehearing was had on the twenty-third day of July, 1877, and the state, by its attorney, appeared and contested the plaintiff's rights. Full proofs were taken, and as a result, the department of the interior found all the facts to be as claimed by plaintiff, but decided that the plaintiff was not entitled to the land, because at the time he made his settlement upon it as a pre-emptor he had knowledge of the fraudulent and void claim of Jaughin thereto.

It is then alleged that the decision of the secretary was erroneous, and that it was upon a question of law, and not of fact, and that the claim of Jaughin was in fact no bar to plaintiff's pre-emption claim.

The court below sustained a demurrer to the complaint; and we think it did so properly.

On March 1, 1877, an act was passed by Congress entitled "An act relating to indemnity school selections in the state of California," and commonly known as the Booth Act. (19 U. S. Stats. 267.)

By the first section of the act, "the title to the lands certified to the state of California known as indemnity school selections, which lands were selected in lieu of sixteenth and thirty-sixth sections, lying within Mexican grants, of which grants the final survey had not been made at the date of such selection by said state," was confirmed to the state.

By the second section of the act it is provided "that when indemnity school selections have been made and certified to said state, and said selections shall fail by reason of the land in lieu of which they were taken not being included within such final survey of a Mexican grant, or are otherwise defective or invalid, the same are hereby confirmed, and the sixteenth and thirty-sixth sections in lieu of which the selection was made shall, upon being excluded from such final survey, be disposed of as other public lands of the United States; *provided*, that if there be no such sixteenth or thirty-sixth section, and if

the land certified therefor shall be held by an innocent purchaser for a valuable consideration, such purchaser shall be allowed to prove such facts before the proper land-office, and shall be allowed to purchase the same at $1.25 per acre, not to exceed three hundred and twenty acres for any one person; *provided,* that if such person shall neglect or refuse, after knowledge of such facts, to furnish such proof and make payment for such land, it shall be subject to the general land laws of the United States.

By this section, Congress confirmed to the state such indemnity school selections as had been made and certified to it, and which would fail by reason of the land in lieu of which they were taken not being included within the final survey of a Mexican grant, "or are otherwise defective or invalid." (*Martin* v. *Durand,* 63 Cal. 39.)

It was then further provided in the act that the confirmation should not apply to mineral lands, etc., nor extend to the lands settled upon by any actual settler claiming the right to enter, not exceeding the prescribed legal quantity under the homestead or pre-emption laws; *provided,* that such settlement was made in *good faith* upon lands not occupied by the settlement or improvement of any other person, and prior to the date of certification of the lands to the state by the department of the interior; *and provided further,* that the claim of such settler should be presented to the register and receiver of the district land-office, together with the proper proof of his settlement and residence, within a given time.

It is clear that the land in question was confirmed to the state by this act if the plaintiff's settlement upon it was not made in good faith, and when it was not occupied by the settlement or improvements of any other person.

When the case was heard before the department of the interior, and all the facts were presented, that department decided that the plaintiff was not entitled to the land.

What the facts were which were presented before the department we are not advised, but it is evident the decision must have been made upon the ground that plaintiff's settlement was not made in good faith, he knowing at the time of Jaughin's claim. Whether it was made in good faith or not was a question of fact, or at any rate a mixed question of law and fact, and the decision of the department upon it was final.

" It would lead to endless litigation and be fruitful of evil if a supervisory power were vested in the courts over the action of the numerous officers of the land department on mere·questions of fact presented for their determination." (*Quinby* v. *Conlan*, 104 U. S. 426.)

" It is a sound principle that when there is a mixed question of law and fact, and the court cannot so separate it as to see clearly where the mistake of law is, the decision of the tribunal to which the law has confided the matter is conclusive." (*Marquez* v. *Frisbie*, 101 U. S. 476.)

There are many averments in the complaint of fraud, conspiracy, and fraudulent acts on the part of the defendant's grantor, but they cannot be regarded, because there are no particulars of the fraud showing what it was, and how it was perpetrated. (*United States* v. *Atherton*, 102 U. S. 372; *Semple* v. *Hagar*, 27 Cal. 163; *Kent* v. *Snyder*, 30 Cal. 666.)

Besides, whatever defects or irregularities there may have been in Jaughin's application to purchase the land from the state, they were cured by the issuance of the patent, and cannot be called in question in this action, where the plaintiff is not seeking to obtain the state's title.

The judgment should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is affirmed.