[Civ. No. 1001.  First Appellate District.—July 12, 1912.]

## FRANK P. BACON, Appellant, v. ELLA ETTA B. SOULE et al., Respondents.

CORPORATION—DISSOLUTION AND DISTRIBUTION OF ASSETS—FRAUD BY SISTERS UPON BROTHER—SUFFICIENCY OF COMPLAINT.—In an action by a brother for damages for alleged fraud of his sisters upon the dissolution and distribution of the assets of a corporation in which they owned equal shares, and of which the sisters had been the directors, and as such had sold all of the fixtures of a dwelling, which was selected by the brother as his share of the assets, upon such dissolution, in the belief that it still retained the fixtures as

he had last seen it, without disclosure by his sisters to the contrary, where the complaint alleges all of the facts, and that he relied, without examination, upon the integrity of his sisters and their affection for him, believing that they would not defraud him or take advantage of or deceive him, or conceal any fact from him, in their mutual dealings, it is held that, unless the complaint shows actual fraud, or a confidential relation between the parties, in the matter of their controversy, it states no cause of action.

ID.—NATURE OF CONFIDENTIAL RELATION.—A "confidential relation" is ordinarily synonymous with a "fiduciary relation," and it may in law be defined to be any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such relation ordinarily arises where confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts, or assumes to accept, the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent.

ID.—PRESUMPTION OF EXISTENCE OF CONFIDENTIAL RELATIONS—BROTHER AND SISTER NOT INCLUDED—QUESTION OF ACTUAL EXISTENCE.— Though there are certain relations in which confidence is presumed to exist, in each of which the party in whom the confidence is reposed must stand unimpeached of the slightest abuse of the confidence reposed, and has the burden to prove the contrary, yet no such confidential relation is presumed to exist between brother and sister because of their blood relation; still that relation may be considered as a circumstance in determining whether or not, in any given case, a confidential relation actually existed between them.

ID.—CAUSE OF ACTION BASED ON CONFIDENTIAL RELATION NOT STATED— VOLUNTARY ASSUMPTION BY SISTERS ESSENTIAL.—A cause of action proceeding upon constructive fraud arising out of the confidential relation of the sisters, as defendants, toward their brother, as plaintiff, is not stated, where there is nothing in the complaint to show that the sisters voluntarily assumed a relation of trust and confidence toward their brother, as defined by section 2219 of the Civil Code. While plaintiff alleges generally that he had confidence in his sisters, he shows by specific averments that there was no mutual affection or confidence between them.

ID.—RELIANCE UPON PARTNERSHIP RELATIONS NOT SHOWN—NONEXISTENCE OF PARTNERSHIP.—Though the complaint alleges that the plaintiff, in negotiating the settlement of the corporation's affairs, relied upon his "confidence in the defendants as partners," yet such allegation is without effect, where the complaint, as a whole, clearly shows that the plaintiff and the defendants were not, and

. . . .

never had been, partners, in the ordinary sense of that term. The claim of the reliance of plaintiff upon their relations as partners is based upon the erroneous assumption that because the plaintiff was a stockholder and the defendants were stockholders and directors of the same corporation, they were partners and trustees of defendant upon the final settlement between them.

ID.—TRUST RELATIONS NOT EXTENDING TO PRIVATE DEALINGS BETWEEN STOCKHOLDERS UPON DISSOLUTION.—The trust relation between the directors and stockholders, which applies while the corporation is a going concern, does not extend to private dealings between them upon dissolution of the corporation and distribution between the respective stockholders in proportion to their respective shares, as a private transaction between them as individuals, which is purely personal to each of them. In that case their respective duties and obligations must be measured by the rules relating to the ordinary transactions of individuals. In such private dealings the fact that the directors, as individuals, knew facts gained through their official position, and were silent concerning them, is not material.

ID.—FACTS CONSTITUTING ACTUAL FRAUD NOT ALLEGED.—The nearest approach to a statement of actual fraud is the allegation the defendants "at all times fraudulently concealed from the plaintiff the fact" that the corporation had previously sold the fixtures and furnishings of the house selected by the plaintiff as his share of the corporation assets. This, however, was, at best, a conclusion of the pleader, and the facts constituting the actual fraud must be alleged, but are not averred. In the absence of averments showing the facts and circumstances of the concealment alleged to have been practiced upon the plaintiff, the complaint "must be held as destitute of allegations of fraud as if it were entirely silent upon the subject."

ID.—ABSENCE OF SPECIAL AVERMENTS SHOWING FRAUD.—There are no special averments either that plaintiff was acting under mental disability or that the defendants misrepresented anything to him, or misled him to his detriment in any particular, or in any manner prevented him from investigating and ascertaining for himself the true condition of the property allotted to him.

ID.—ABSENCE OF CONFIDENTIAL RELATION—MERE SILENCE NOT A FRAUDULENT CONCEALMENT.—In the absence of a confidential relation, the defendants were under no obligation to volunteer information to the plaintiff, which was as readily accessible to him as it was to the defendants; and as "the law will not undertake the care of persons who will not, with the means at hand, take care of themselves," the mere silence of the defendants cannot be construed to be a fraudulent concealment sufficient to support an action for fraud.

APPEAL from a judgment of the Superior Court of Alameda County rendered upon demurrer to a complaint. T. W. Harris, Judge.

The facts are stated in the opinion of the court.

F. A. Berlin, for Appellant.

John A. Percy, for Respondents.

LENNON, P. J.—This is an appeal from a judgment entered upon an order sustaining defendants' demurrer to plaintiff's fourth amended complaint without leave to further amend.

The cause of action stated in plaintiff's complaint sounds in damages for fraud and deceit alleged to have been practiced upon plaintiff by the defendants in the negotiation and consummation of an agreement whereby certain real property of the Bacon Land and Loan Company, Inc., was transferred to the plaintiff in lieu of his stock and interest in the corporation.

The salient features of the transaction out of which the controversy arose and upon which the plaintiff's cause of action purports to be founded are stated in the complaint to be these:

The plaintiff, Frank P. Bacon, is a brother of the defendants, Ella Etta B. Soule and Carrie J. Bacon. They, the plaintiff and defendants, were the owners in equal shares of the entire corporate capital stock of the Bacon Land and Loan Company, and at one time all three were directors and officers of the corporation. In the year 1895 the plaintiff resigned as the president and as a director of the corporation. The defendants, however, continued to be officers and directors of the corporation until it was dissolved in the year 1905. The dissolution of the corporation was brought about by the dissensions and disagreements and the constantly conflicting views and opinions of the plaintiff and defendants as to the proper management of the corporation, and from this resulted the agreement, which is the basis of this action, wherein the properties of the corporation were partitioned and transferred to the plaintiff and the defendants in lieu of the surrender

and cancellation of their respective stockholdings in the corporation.

This agreement was entered into and completely executed in the year 1905, whereupon the corporation was dissolved. Pursuant to the agreement, plaintiff selected and received, as a portion of his share of the assets of the corporation, a certain lot of land with a dwelling-house thereon at the agreed valuation of $30,000. When plaintiff had last seen and examined the dwelling-house, some two years before, it contained fixtures and furnishings valued at $2,000, which he believed were still in place at the time he selected the property in question as a portion of his share of the corporation assets. The fixtures and furnishings, however, had been sold by the corporation and removed from the house by the purchaser some time prior to the consummation of the agreement between plaintiff and the defendants. This fact was not disclosed to the plaintiff by the defendants during the negotiations for the division and distribution of the corporation assets, and it was not discovered by plaintiff until three months later, and after he had accepted and received the property in question without having seen or examined the house or its contents for a period of two years.

The plaintiff, in negotiating with the defendants, "supposed and believed" that the house was fitted and furnished as when he last saw it, and in accepting the property without personal or any investigation of its condition and contents, he relied "upon the honesty and integrity of his sisters and upon their natural love and affection" for him, never believing that they, "his nearest blood relatives, would defraud or impose upon him or in any way deceive him or conceal from him any fact relating to their dealings with each other."

The defendants, however, "allowed the plaintiff to accept the property" without disclosing to him that the fixtures and furnishings had been previously sold and removed, notwithstanding the fact that they knew that the plaintiff, when he agreed to accept the property at a valuation of $30,000, was acting under the "inducement and belief" that the house was in the same condition as to fixtures and furnishings as it was some two years before. It does not appear, however, that the defendants, either by words or artifice calculated to deceive, induced the belief in plaintiff that the property in question

.was in the same condition as when he last saw it, and it is not claimed or alleged that the defendants knew or had any reason, aside from their blood relationship, to suppose that the plaintiff was placing any trust or confidence in them in connection with this particular transaction.

Plaintiff's complaint, in part, proceeds also upon the theory that because the plaintiff and defendants were stockholders in the corporation, they were business partners in the ordinary sense, and in that behalf, the complaint alleges that the plaintiff was induced to accept the property in question without an investigation as to its condition or its fixtures or furnishings because of "his confidence in the defendants as his partners in the joint ownership of the large properties involved, amounting to several hundred thousand dollars."

It is further alleged that if the fixtures and furnishings of the house had not been removed, the rental value of the house would have been $50 per month, but because of their removal, the house could not be rented and remained vacant for a period of eighteen months. Although the plaintiff had agreed to take the property in question at the valuation of $30,000, its actual market value at the time of its transfer to him was not more than $20,712, because of the removal of the fixtures and the consequent damage to the house. By reason of all this, the complaint alleges that the plaintiff was damaged in the sum of $10,188.

From the foregoing statement of the essential facts upon which the plaintiff's cause of action is founded, it is evident that damages are sought primarily upon the theory that a confidential or fiduciary relation existed between the plaintiff and the defendants because of their blood relationship, and because of the further fact that the defendants were officers and directors of a corporation in which the plaintiff was a stockholder, and that therefore the allegations of the complaint *prima facie* imposed a legal obligation upon the defendants to voluntarily disclose to the plaintiff the exact status of the corporation's assets before he had selected and received his share of the same.

It is conceded that the complaint does not state a cause of action if the pleaded facts do not show actual fraud or do not actually, or as a matter of law, show the existence of a confi-

dential or fiduciary relation between the parties with reference to the transaction out of which the controversy arose.

The law relating to the subject of confidential relations has been so often declared and is generally so well understood that a mere reference to its underlying principles will suffice for the discussion and decision of the paramount point presented upon this appeal. A "confidential relation" in law may be defined to be any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. A "fiduciary relation" in law is ordinarily synonymous with a "confidential relation." It is also founded upon the trust or confidence reposed by one person in the integrity and fidelity of another, and likewise precludes the idea of profit or advantage resulting from the dealings of the parties and the person in whom the confidence is reposed. (Civ. Code, sec. 2219; *Meyer* v. *Reimer,* 65 Kan. 822, [70 Pac. 869]; *Robins* v. *Hope,* 57 Cal. 493.)

Confidential relations are presumed to exist between husband and wife, partners, parent and child, priest and parishioner, principal and agent, guardian and ward, counsel and client, etc., and in each of said relations the party in whom the confidence is reposed must stand in his dealings with the other party unimpeached of the slightest abuse of the confidence reposed, and if he derives or claims any advantage from the relation, the law places upon him the burden of showing that the transaction out of which the advantage arose was fair and just and fully understood and consented to by the party confiding in him. (Smith on Fraud, sec. 190; *Robins* v. *Hope,* 57 Cal. 493; *Brison* v. *Brison,* 75 Cal. 525, [7 Am. St. Rep. 189, 17 Pac. 689]; *Jackson* v. *Jackson,* 94 Cal. 446, [29 Pac. 957]; *Dimond* v. *Sanderson,* 103 Cal. 97, [37 Pac. 189].)

No such confidential relation, however, is presumed to exist between brother and sister merely because of their blood relationship. While it is true that the relationship of brother

and sister is a material circumstance to be considered in determining whether or not in any given case a confidential relation actually existed, nevertheless the mere fact that the parties to the transaction are brother and sister does not in and of itself create a confidential relation. (*Odell* v. *Moss,* 130 Cal. 352–356, [62 Pac. 555].) This being so, it follows that plaintiff's cause of action, in so far as it proceeds upon the claim of fraud, actual or constructive, arising out of a confidential relation must rest upon the theory that the defendants did in fact voluntarily assume toward the plaintiff a relation of personal confidence as defined and contemplated by section 2219 of the Civil Code.

Constructive fraud may be said to consist of (1) any breach of duty which, without an actual fraudulent intent, gains an advantage to the person in fault by misleading another to his prejudice; or (2) of any such act or omission which the law specifically declares to be fraudulent without respect to actual fraud. (Civ. Code, sec. 1573.)

The existence of actual fraud is always a question of fact, and may consist of any of the following acts committed by the party to the contract with the intent to deceive the other party thereto, or to induce him to enter into a contract, viz.: (1) The suggestion as a fact of that which is not true by one who does not believe it to be true; (2) the positive assertion in a manner not warranted by the opinion of the person making it of that which is not true, though he believes it to be true; (3) the suppression of that which is true by one having knowledge or belief of the fact; (4) any other act fitted to deceive. (Civ. Code, secs. 1572–1574.)

It will thus be seen that fraud may be predicated upon the suppression of the material facts of a transaction. It may be inferred from the circumstances of the transaction and the condition of the parties, and when a confidential relation exists, either in fact or in contemplation of law, it is the duty of the person in whom the confidence is reposed to fully and fairly disclose every material matter within his knowledge of which he knows the other party to be ignorant. Failing to do so, the party in whom the confidence reposes is guilty of fraud, and is liable in damages for the resulting loss to the other party. (*Belden* v. *Hendriques,* 8 Cal. 87; *Colton* v.

*Stanford,* 82 Cal. 351, [16 Am. St. Rep. 137, 23 Pac. 16] ; Smith on Fraud, sec. 9 ; *Smith* v. *Patterson,* 33 Ohio St. 70.)

The burden of charging, as well as proving, fraud, actual or constructive, is ordinarily upon the party alleging it, and the sufficiency of the facts pleaded in the present case to constitute a cause of action depends upon whether or not the allegations of the plaintiff's complaint show that the defendants did in fact voluntarily assume a relation of personal confidence with the plaintiff which was subsequently betrayed in the transaction complained of.

The only support for plaintiff's claim of the existence of a confidential relation is to be found in those allegations of the complaint wherein it is averred in substance that the plaintiff relied absolutely upon the honesty and integrity of his sisters, upon their natural love and affection for him, and upon his confidence in them as his partners.

Aside from the question of partnership, which will be dealt with and disposed of later, these allegations of the complaint were not sufficient to create a confidential relation within the meaning of section 2219 of the Civil Code. In and of itself the allegation that the plaintiff relied upon the honesty and integrity of the defendants merely because they were his sisters counts for naught in the creation of a confidential relation. In order to burden the defendants with the duties and responsibilities which ordinarily arise out of such a relation, it was incumbent upon the plaintiff, not only to allege his trust and confidence in the defendants, but to aver, if he could truthfully do so, the existence of facts and circumstances showing, or tending to show, that they "voluntarily assumed" toward him "a relation of personal confidence." (*Ruhl* v. *Mott,* 120 Cal. 668, [53 Pac. 304].) No such situation of the parties is alleged, nor can such a situation be fairly inferred from the associations and dealings of the parties prior to the time and at the time that the contract in controversy was executed. Not only is the complaint silent upon this subject, but it affirmatively appears therefrom that there was no love lost between the plaintiff and his sisters. "They were never able to agree upon any harmonious line of action." The constant conflict between them in matters of business was so sharp and disagreeable that the plaintiff was compelled some ten years before the transaction complained of to resign as a

director of the Bacon Land and Loan Company, and thereafter was practically excluded by the defendants from any participation in the management of its affairs.

In addition to this, it further appears from the allegations of the complaint that about three years prior to the execution of the contract in controversy, the plaintiff was compelled by the defendants to give up his residence in his father's home. It does not appear from the complaint that the plaintiff ever thereafter saw the defendants, or that he ever thereafter had any personal communication or dealings with them whatsoever.

Thus it appears from the complaint in its entirety that for at least a period of ten years prior to the transaction in question the plaintiff and his sisters were at war and dealing with each other at arm's-length; and that finally, because of the hostile attitude of the defendants, the plaintiff was compelled to segregate his interest from theirs.

Surely in such a situation it cannot be fairly claimed that there existed between the plaintiff and the defendants any mutual love and affection or trust and confidence.

In short, while the plaintiff alleges generally that he had confidence in his sisters, "he shows specifically that he had not." (*Tillaux* v. *Tillaux*, 115 Cal. 663–675, [47 Pac. 691, 695].)

The plaintiff, as hereinbefore indicated, relies in part, to support his claim of a confidential relation, upon the theory that he and the defendants were partners.

The complaint, it is true, alleges that the plaintiff in negotiating the settlement of the corporation's affairs, relied "upon his confidence in the defendants as his partners." It nevertheless appears clearly enough from the complaint as a whole that the plaintiff and defendants were not, and never had been, partners in the ordinary sense of the term. The claim of a confidential relation in this behalf is founded solely upon the erroneous assumption that because the plaintiff was a stockholder and the defendants directors of the same corporation, the defendants were therefore partners of and trustees for the plaintiff in all matters and transactions arising between them, whether in or out of the corporation. This position is untenable. It may be conceded that generally the director of a corporation is a trustee for the corpora-

tion and its stockholders in the management of the corporation's affairs,. and in the disposition of its property, but "the doctrine that officers and directors are trustees of the stockholder applies only in respect to their acts relating to the property or business of the corporation. It does not extend to their private dealings with stockholders or others, though in such dealings they took advantage of knowledge gained through their official position." (21 Am. & Eng. Ency. of Law, 2d ed., p. 898; 2 Cook on Corporations, 6th ed., sec. 640.)

In the case at bar it is apparent that in dealing with the subject matter of the controversy, the defendants were not acting in any manner as the representatives of the corporation. On the contrary, they, as individuals, were dealing with the plaintiff as an individual in a transaction purely personal to each of them, and therefore their respective duties and obligations to one another must be measured by the rules relating to the ordinary transactions of individuals rather than by those which pertain to and govern the conduct of officers· of a corporation in the management and control of the corporation's affairs and property.

The complaint is barren of facts sufficient to constitute a cause of action for actual fraud. The nearest approach to a statement of actual fraud is the allegation that the defendants "at all times fraudulently concealed from the plaintiff the fact" that the corporation had previously sold the fixtures and furnishings of the house selected by the plaintiff as his share of the corporation assets. This, however, was not enough to fasten a charge of actual fraud upon the defendants. It was at best but a conclusion of the pleader, and facts showing actual fraud must be averred. In the absence of averments showing the facts and circumstances of the concealment alleged to have been practiced upon the plaintiff, the complaint "must be held to be as destitute of allegations of fraud as if it were entirely silent upon the subject." (*Kent* v. *Snyder,* 30 Cal. 667; *Feeney* v. *Howard,* 79 Cal. 525, [12 Am. St. Rep. 162, 4 L. R. A. 826, 21 Pac. 984]; *Semple* v. *Hagar,* 27 Cal. 163; *Green* v. *Hayes,* 70 Cal. 276, [11 Pac. 716].)

No claim is made that the plaintiff was acting under a mental disability or that the defendants misrepresented anything to him, or misled him to his detriment in any particular,

or in any manner prevented him from investigating and ascertaining for himself the true condition of the property allotted to him.

In the absence of a confidential relation, the defendants were under no obligation to volunteer information to the plaintiff which was as readily accessible to him as it was to the defendants, and as "the law will not undertake the care of persons who will not, with the means at hand, take care of themselves," ,the mere silence of the defendants cannot be construed to be a fraudulent concealment sufficient to support an action for fraud. (*Commissioners* v. *Younger,* 29 Cal. 172–176; *Hanscom* v. *Drullard,* 79 Cal. 234–237, [21 Pac. 736] ; *Champion* v. *Woods,* 79 Cal. 17–20, [12 Am. St. Rep. 126, 21 Pac. 534] ; *Ruhl* v. *Mott,* 120 Cal. 668, [53 Pac. 304].)

The complaint does not state facts sufficient to constitute a cause of action, and the demurrer thereto was properly sustained. The judgment appealed from is affirmed.

Hall, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 10, 1912.