ELIZA J. STANLEY, by AUDREY P. HICHBORN,
Her Conservator, and AUDREY P. HICHBORN, Administrator of
ALLURA M. STANLEY

vs.

HOLLIS M. SHAW et als.

ELIZA J. STANLEY, by AUDREY P. HICHBORN,
Her Conservator, and AUDREY P. HICHBORN, Administrator of
ALLURA M. STANLEY.

vs.

HOLLIS M. SHAW.

AUDREY P. HICHBORN, Conservator of ELIZA J. STANLEY

vs.

HOLLIS M. SHAW and INHERITANCE REALIZATION COMPANY.

(Three suits in Equity)

Kennebec.	Opinion November 15, 1921.

*When a fiduciary relation exists between two parties, it is not necessary to prove
specific fraudulent representations to obtain relief in a court of equity, where
there has been an unfair and unjust transfer of property or property rights
from the confiding dependent to the superior confidant.*

From time to time between 1908 and 1916 Hollis M. Shaw received from Eliza J.
and Allura M. Stanley conveyances and assignments of property until he had
absorbed the greater part of all of their estate, real and personal, in possession
amounting to more than twenty thousand dollars, and besides had acquired
an assignment of their expectant interest in a much larger estate as presumptive
heirs of an aged and demented relative. For these conveyances and assign-
ments the consideration was grossly inadequate, indeed there was hardly any
consideration except indefinite and unsecured promises.

The above entitled suits are brought for an accounting and to set aside these transfers to Shaw as fraudulent and void.

No specific fraudulent representations were proved. This is not decisive. As was said by the learned Justice who heard the case originally "Fraud treads no beaten path—and the same inequitable and disastrous results may be reached by gentler and more seductive methods."

The decree made by a single justice found that a fiduciary relation existed between the parties and that in view of such relation the transfers were fraudulent and void, although there was no proof of any specific fraudulent representation. The defendant strenuously contended that a fiduciary relation cannot be presumed but must be proved, and that in this case no such relation had been proved. But the evidence to prove a fiduciary relation was abundant.

The Stanley sisters were undoubtedly intelligent but were aged, inexperienced, confiding and credulous. Shaw was in the prime of life, a shrewd, experienced business man. The inequality between the parties could hardly have been greater. The confidence and trust reposed in him by the sisters was well nigh absolute. In dealing with them, acting for himself or his corporations, it was, of course, plainly his duty to have them seek disinterested and competent advice. He made no such suggestion. They sought no other adviser. They relied implicitly on him. A plainer case of a fiduciary relation can hardly be imagined. He took an unfair and inequitable advantage of the confidence and trust reposed in him.

On appeal by defendants. Three bills in equity brought to obtain relief from conveyances and assignments of property and property rights made by two elderly, maiden ladies, being sisters, to the defendant, Hollis M. Shaw, as being unfair, unjust, and inequitable, alleging that an imposition and unfair advantage was practiced by defendant upon said two sisters, and that a fiduciary relation existed between defendant and said two sisters. The three cases were heard by the Chief Justice who sustained the bills and decreed the relief prayed for, and defendants took an appeal. Appeal dismissed. Decree affirmed.

Case is fully stated in the opinion.

*George W. Heselton,* for complainants.

*Leroy L. Hight, and Andrews & Nelson,* for respondents.

SITTING: SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

DEASY, J. In the year 1908 the defendant, Hollis M. Shaw, first became acquainted with two aged sisters Allura M. Stanley, since deceased, and Eliza J. Stanley represented in this litigation by a

Conservator of her estate.  The sisters owned the farm in Winthrop estimated to be worth four thousand dollars upon which they lived. Partly in deposits then in banks, and partly in inheritances which soon after accrued to them they had some seventeen thousand dollars in personal property.

Shaw, who was a bond salesman, sold to the sisters $8,500 in bonds of a Farmington Corporation, the value of which is not questioned. As time went on the acquaintance thus formed became closer and Shaw came to be implicitly trusted by the aged ladies and to be their sole adviser and business agent.

In the year 1911 he organized a corporation called The Dirigo Power Co. and attempted to develop a hydro-electric power at Union in Knox County.  The Dirigo Power Co. issued bonds which at best were highly speculative, and in the end proved to be nearly worthless.  Acting under Shaw's advice the sisters exchanged $6,500 of their Farmington bonds for a like amount of the Dirigo Power Co. bonds.  He then borrowed of them two thousand dollars for the Dirigo Company giving its bonds as security.  They still had two thousand dollars of Farmington bonds and these were made over to Shaw without apparent consideration.

Excepting six thousand dollars which the Misses Stanley had invested in an annuity, Shaw thus acquired substantially all of their personal estate.

In 1916 they conveyed the farm to him reserving only "the right to live and have a home upon said premises in the house thereon." A part of the farm he conveyed to Ellen Shaw, his mother, and the rest he mortgaged to secure a loan of two thousand dollars of money borrowed for his own use.  He thus absorbed about all of the property which the sisters had in possession.  Moreover, he discovered that they had an expectant interest in another and larger estate and prepared to acquire that.

The sisters were the sole presumptive heirs of a cousin, Benjamin, who was under guardianship, aged, demented, without issue and without testamentary capacity.  Benjamin's estate was worth something more than one hundred thousand dollars.

Shaw organized a corporation called The Inheritance Realization Co.  His plan was to have this company succeed to Benjamin's estate upon his death.

To assignments or contracts for this purpose he secured the assent and signatures of the Stanley sisters, and of three of the five more remote kindred who would inherit Benjamin's property in the event of his surviving Allura and Eliza Stanley. Shaw gave half of the stock in the Inheritance Company to the Stanley sisters, and afterwards obtained a transfer of it to himself. He kept sixteen per cent. of the stock to use in settling with two more relatives, and not succeeding in this, secured an assignment of it to himself. Ten per cent. he reserved for his own services. Twenty-four per cent. was assigned to the three expectant heirs other than the Stanley sisters, whose assent was obtained. This stock he has also bought so that he together with two men who have advanced him money for a share in the enterprise own the entire stock in the Inheritance Corporation.

These suits are brought by the Administrator of Allura Stanley and the Conservator of Eliza's estate for an accounting, and to set aside as fraudulent these various transfers.

The defendant, Hollis Shaw, denies that any fraud has been practiced. He claims to have acted in good faith. He says that the transfers to him were in consideration of support and maintenance provided and to be provided by him, and that he has agreed to pay Eliza ten thousand dollars out of her brother's one hundred and seventeen thousand dollar estate.

The three cases were heard by the Chief Justice who sustained the bills and decreed the relief prayed for. In his memorandum of decision the law applicable to the case is stated so accurately and felicitously that we cannot do better than to adopt and quote it.

"It is not claimed by the plaintiff that Mr. Shaw obtained possession of the Stanley property and rights by specific and direct false and fraudulent representations. Were such a claim made, the evidence is not sufficient to support it. But fraud treads no beaten path, and the same inequitable and disastrous results may be reached by gentler and more seductive methods.

When a fiduciary relation is found to exist between two parties whether that relation has been created by law or by the designing acts of one of the parties, especially when they are not on an equality, the opportunity for imposition and unfair advantage afforded by such relationship is so great as to render all transactions between them subject to suspicion, and when a transfer of property or property rights is made from the confiding dependent to the superior confidant

either directly or indirectly a court in equity will scrupulously inquire into the fairness and justness of the transaction. If the facts show that an unfair advantage has been taken it will intervene to protect the confiding and injured party even from the results of what might under ordinary circumstances as between parties dealing on an equality and sustaining no such confidential relations to each other, be deemed their own improvidence.

Equity throughout its broad domain performs no higher and finer service than this."

This statement of the law is supported by many authorities among which may be cited, *Thomas* v. *Whitney*, (Ill.), 57 N. E., 808; *Bingham* v. *Sheldon*, 91 N. Y. S., 917; *McCowan* v. *Short*, (Ind.), 118 N. E., 538; *Hawkes* v. *Lackey*, 207 Mass., 424; *Tate* v. *Williamson L. R.*, 2 Ch., 55; *Bacon* v. *Soule*, (Cal.), 126 Pac., 384; Story's Equity Jurisprudence, Secs. 258-307. Bispham Principles of Equity, Sec. 238.

Not disputing the correctness of the above statement of the law, the defendant Shaw says that the existence of a fiduciary relation is not to be presumed, but must be proved, and that in this case such relation has not been established by evidence. But the fiduciary relation is overwhelmingly proved. It is established by the defendants' own testimony.

The Chief Justice who heard the case found "that Mr. Shaw by a long continued and persistent course of conduct artfully and fraudulently gained the complete confidence of these two sisters and created such an overmastering influence that they were willing to take and did take any steps with reference to their property that he suggested." Every reasonable presumption is in favor of the correctness of this finding of fact. Moreover, it is clear that no other conclusion could have been reached. The Stanley sisters were undoubtedly intelligent, but were aged, inexperienced, confiding and credulous. Shaw was in the prime of life, a shrewd experienced business man. The inequality between the parties could hardly have been greater. The confidence and trust reposed in him by the sisters was well nigh absolute. In dealing with them, acting for himself or his corporations, it was, of course, plainly his duty to have them seek disinterested and competent advice. He made no such suggestion. They sought no other adviser. They relied implicitly on him. A plainer case of a fiduciary relation could hardly be imagined.

For his own benefit and for that of his corporations he took an unfair and inequitable advantage of the confidence and trust reposed in him. The alleged obligations set up as the consideration for the transfers, even if legally available and enforcible are grossly inadequate and are unsecured and supported only by the broken reed of Shaw's credit. The other defendants have no superior equities. In each case the entry must be

*Appeal dismissed.*
*Decree affirmed.*